STATE, Respondent, v. SHAW, Appellant.

*No. State 93. Submitted under sec. (Rule) 251.54 March 1, 1973.—*
*Decided March 27, 1973.*
(Also reported in 205 N. W. 2d 132.)

For the appellant the cause was submitted on the brief of *Robert T. McGraw* of Waukesha.

For the respondent the cause was submitted on the brief of *Robert W. Warren,* attorney general, and *Stephen M. Sobota,* assistant attorney general.

HALLOWS, C. J.   Of the several questions raised on appeal, only two will be discussed as having merit: (1) Whether the evidence was sufficient to sustain the conviction, and (2) whether the court erred in failing to give an instruction on alibi.

Shaw and his companion Byron Welker were stopped by the New Berlin police in the vicinity of the Slaby home about 3 :30 a. m. on the morning of June 30th and after a routine record check Shaw was held by the New Berlin police and turned over to the Milwaukee police on old traffic warrants. Later in the morning, about 6 :30, the New Berlin police in response to a call found a safe and a wheelbarrow in the backyard of a residence on West National Avenue in New Berlin just west of the

Slaby home, to which tire marks from the wheelbarrow led.

The Slaby house was apparently entered through a front basement window and the safe removed. An oil tank in the basement showed the person who entered had slid down from the top of the tank, wiping off dirt and oil. In addition to the safe, a .22-caliber revolver and foreign coins were taken from the Slaby home.

Shaw was linked to this burglary by fingerprints on the outside of a back basement window screen in such a position as to indicate an attempted removal. Other unidentified prints were found on the screen and inside the house. Burnt matches and matchbooks advertising "Sur-Fine Sugar" were found in the Slaby home and part of a matchbook bearing the same advertisement was found on Shaw's person while in custody. Holly Slaby, a twenty-year-old daughter of George D. Slaby, who did not live at home and who was granted immunity, testified she knew Welker and Shaw, that they needed money to go to California and she had told them her parents would be gone to Florida at the end of June and they could probably find money there. She further testified that Shaw replied that he and Welker would do the job, which would be easy, since he had committed burglaries before. This conversation according to Miss Slaby, took place at her apartment on the east side of Milwaukee in the middle or latter part of June. Miss Slaby further testified that on June 24th she again talked to Welker and Shaw at Welker's east side apartment about the burglary and gave Shaw her parents' address. In the early morning of June 30th, about two hours prior to stopping Shaw and Welker, the police officer had seen them driving within two blocks of the Slaby residence.

Shaw argues the evidence could not sustain a conviction because there was no proof he entered the home. None of his fingerprints were found inside the house;

his trousers, which had been examined at the Wisconsin Crime Lab, contained no oil tank grime; and no revolver or foreign coins were found in his possession, although he, Welker, and the automobile were thoroughly searched. The safe removed from the Slaby home was of such size that several policemen had difficulty moving it and consequently Shaw, who is five feet nine inches and weighed 143 pounds and Welker, who is only five feet seven inches, weighing 130 pounds, could not have moved the safe even with a wheelbarrow.

Shaw testified on his own behalf that the fingerprints on the basement screen were left there a few days before when he went to the home with Miss Slaby to get her dog, at which time he braced himself against the screen while laughing. This story was corroborated by other defense witnesses but was denied by Miss Slaby. Defense witnesses also denied Miss Slaby's testimony concerning Shaw's statement allegedly made in reaction to her suggestion as to burglarizing her parents' home. Welker testified that he and Shaw were in the vicinity of the Slaby home but they did not enter it and that prior to being stopped by the New Berlin police they had been on Kane Street on the east side of Milwaukee.

This testimony presented a jury question and the jury chose to believe the story of Miss Slaby rather than Shaw and his witnesses. It also was impressed with the force of the circumstantial evidence. But Shaw argues the evidence as a matter of law cannot convince a jury beyond a reasonable doubt.

The test on appeal of the sufficiency of the evidence to convict is whether the evidence adduced, entitled to belief, and rationally considered by a jury was sufficient to prove the defendant's guilt beyond a reasonable doubt. *State ex rel. Kanieski v. Gagnon* (1972), 54 Wis. 2d 108, 194 N. W. 2d 808; *Zebrowski v. State* (1971), 50 Wis. 2d 715, 185 N. W. 2d 545; *State v. Cassel* (1970), 48 Wis. 2d 619, 180 N. W. 2d 607; *Alston v. State* (1966), 30

Wis. 2d 88, 140 N. W. 2d 286; *State v. Stevens* (1965), 26 Wis. 2d 451, 132 N. W. 2d 502. The test is not whether this court is convinced of the defendant's guilt but whether the jury acting reasonably could be so convinced. *Hicks v. State* (1970), 47 Wis. 2d 38, 176 N. W. 2d 386; *Lemerond v. State* (1969), 44 Wis. 2d 158, 170 N. W. 2d 700; *Grayson v. State* (1967), 35 Wis. 2d 360, 151 N. W. 2d 100; *Lock v. State* (1966), 31 Wis. 2d 110, 142 N. W. 2d 183; *State v. Hanks* (1948), 252 Wis. 414, 31 N. W. 2d 596. While this court has some difficulty with the evidence, it cannot find that no reasonable jury could be convinced beyond a reasonable doubt of Shaw's guilt.

The evidence does not have to remove every possibility before a conviction can be sustained. *See State v. Eberhardt* (1968), 40 Wis. 2d 175, 161 N. W. 2d 287. The test stated in *State v. Johnson* (1960), 11 Wis. 2d 130, 136, 104 N. W. 2d 379, is "that all the facts necessary to warrant a conviction on circumstantial evidence must be consistent with each other and with the main fact sought to be proved and the circumstances taken together must be of a conclusive nature leading on the whole to a satisfactory conclusion and producing in effect a reasonable and moral certainty that the accused and no other person committed the offense charged." The circumstantial evidence must, however, be sufficiently strong to exclude every reasonable theory of innocence, that is, the evidence must be inconsistent with any reasonable hypothesis of innocence. This is a question of probability, not possibility. The fact the evidence shows other persons entered the Slaby home and left unidentified fingerprints does not exclude the certainty beyond a reasonable doubt that Shaw also entered the Slaby home with intent to steal and was thereby guilty of crime. The connecting thread of matchbook covers may be thin, but this circumstantial evidence under the circumstances is sufficiently persuasive to tip the scale in the minds of a reasonable jury that Shaw entered the

Slaby house. The jury could choose to believe Miss Slaby's testimony that Shaw said that he and Welker would do the job, thus supplying the element of intent to steal.

Shaw argues it was error for the trial court to refuse to give an alibi instruction. We agree with the trial court that the testimony placing Shaw in the vicinity of the scene of the crime but denying the burglary is not properly alibi but rather corroboration of his denial of guilt. Welker claimed that prior to being stopped at 3:30 in the morning he and Shaw had been on Milwaukee's east side, but he did not testify how much earlier they had been there. There was also testimony that about two hours before they were stopped, a police officer had seen the Welker car on West National Avenue in New Berlin. In light of the definition of alibi, it does not appear this testimony amounted to such a defense. This court has defined "alibi" as follows:

"The word, 'alibi,' is merely a shorthand method of describing a defense based on the fact that the accused was elsewhere at the time the alleged incident took place. The word, 'alibi,' is simply the Latin word for 'elsewhere.' "

*Logan v. State* (1969), 43 Wis. 2d 128, 135, 168 N. W. 2d 171. *See also: Massen v. State* (1969), 41 Wis. 2d 245, 163 N. W. 2d 616; *State v. Stockman* (1970), 46 Wis. 2d 243, 174 N. W. 2d 249.

One authority has described the purpose of alibi: "Its only design is to prove that the defendant, being at another place at the time, could not have committed the offense charged." 1 Wharton, *Criminal Law & Procedure,* p. 260, sec. 121 (Anderson, 12th ed. 1957), quoted by this court in *Logan, supra.* Other courts have held that an alibi is a defense that at the time of the crime the defendant was so distant from the scene that his participation in the crime was impossible. *See: Williams v. State* (1905), 123 Ga. 138, 51 S. E. 322; *People v. Lukos-*

*zus* (1909), 242 Ill. 101, 89 N. E. 749; *Leeth v. State* (1951), 94 Okla. Crim. 61, 230 Pac. 2d 942; *State v. Ovitt* (1967), 126 Vt. 320, 229 Atl. 2d 237. *See also:* 21 Am. Jur. 2d, *Criminal Law*, p. 205, sec. 136. The Wisconsin cases in which this defense has been interposed have generally involved an alibi where the defendant was in another city or another part of the same city at the time of the offense. *See: Berg v. State* (1969), 41 Wis. 2d 729, 165 N. W. 2d 189; *State v. Richardson* (1969), 44 Wis. 2d 75, 170 N. W. 2d 775; *State v. Stockman* (1970), 46 Wis. 2d 243, 174 N. W. 2d 249. However, in *State v. Grahn* (1963), 21 Wis. 2d 49, 123 N. W. 2d 510, the defendant claimed that at the time of the offense he was at home, his home being not far from the scene of the crime.

Of necessity, the defense of alibi involves presence of the defendant at a place other than the scene of the crime at the time the crime was committed. "If the defendant raises an alibi, he is in effect denying the claim of the prosecution that he was at the scene of the crime at the time it was committed." 1 Wharton, *Criminal Evidence*, pp. 36, 37, sec. 23 (13th ed. 1972). As stated in 21 Am. Jur. 2d, *Criminal Law*, p. 206, sec. 136: "[S]ince an alibi derives its potency as a defense from the fact that it involves the physical impossibility of the accused's guilt, a purported alibi which leaves it possible for the accused to be the guilty person is no alibi at all." Here, the exact time of the burglary is unknown but it happened after 9:30 p. m. on June 29th and during the probable time the crime was committed, Shaw was in the immediate vicinity of the scene of the crime. No alibi was thus presented.

*By the Court.*—Judgment and order affirmed.