STEWART, Plaintiff in error, v. STATE, Defendant in error.

*No. 76–031–CR.  Argued April 5, 1978.—Decided May 2, 1978.*
(Also reported in 265 N. W. 2d 489.)

188

190

For the plaintiff in error the cause was argued by *Ruth S. Downs,* deputy state public defender, with whom on the briefs were *Howard B. Eisenberg,* state public defender, and *Alvin E. Whitaker,* assistant state public defender.

For the defendant in error the cause was argued by *Marguerite M. Moeller,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

HANLEY, J. The sole issue presented for review is whether there was sufficient evidence to support the jury's verdict of guilty.

There is no serious dispute that the evidence adduced at this trial, circumstantial or otherwise, demonstrated beyond a reasonable doubt that a burglary and attempted theft had taken place at the Liberty Pharmacy in the early hours of January 2, 1975. What the defendant does dispute in this appeal is the sufficiency of the evidence to permit the jury to conclude that he perpetrated these crimes.

The evidence upon which the jury made this determination was for the most part circumstantial. This court has long held that because "stealth and secretiveness are the regular features" of the crime of burglary, and because "circumstantial evidence can be as probative and sometimes more probative than direct evidence" (*Peters v. State,* 70 Wis.2d 22, 33, 233 N.W.2d 420 (1975)), such

evidence, even alone, may support a conviction for these crimes. *Murphy v. State,* 75 Wis.2d 522, 525–26, 249 N.W.2d 779 (1977). Nevertheless, in *State v. Shaw,* 58 Wis.2d 25, 205 N.W.2d 132 (1973), this court stated:

"[A]ll the facts necessary to warrant a conviction on circumstantial evidence must be consistent with each other and with the main fact sought to be proved and the circumstances taken together must be of a conclusive nature leading on the whole to a satisfactory conclusion and producing in effect a *reasonable and moral certainty that the accused and no other person committed the offense charged.* The circumstantial evidence must, however, be sufficiently strong to exclude every reasonable theory of innocence, that is, *the evidence must be inconsistent with any reasonable hypothesis of innocence. This is a question of probability, not possibility."* *State v. Shaw, supra* at 29. (Emphasis supplied).

We believe that the circumstantial evidence in this case is not sufficient when analyzed under this test. First, the facts necessary to the inference underlying the identification of one of the defendants, Stewart, as the suspect seen fleeing the pharmacy are inconsistent with each other and with the fact sought to be proved.

Stewart, who was the passenger in the automobile, was wearing a dark coat and stocking cap on the night of his arrest. He was also wearing hiking boots which left a conspicuous imprint in the snow similar to the hiking boot tracks found behind the building next to the pharmacy. The state also notes that the suspect seen fleeing the scene was of the same weight and build as the defendant, Stewart, but not of the heavier Williams. However, the testimony at trial was unequivocable that the suspect seen fleeing the pharmacy left a trail of smooth footprints. Thus, although the evidence describing the suspect bore a general similarity to the defendant, the type of tracks left by the fleeing suspect conflicts with the type of foot gear worn by Stewart on his arrest. This conflict is not reconciled by other evidence.

The state attempts to lessen this conflict by speculating that "quite possibly" Stewart might have been wearing smooth-soled shoes at the time of the burglary and might have later traded shoes with either Williams or an unknown third person. But this explanation is not reasonable in light of the complete absence of evidence indicating the type of shoes—smooth-soled or hiking pattern—worn by Williams, or demonstrating the presence of a third person, at the time of their arrest. Here, the circumstantial evidence identifying by inference Stewart as the suspect seen fleeing the pharmacy failed to achieve the consistence required by *State v. Shaw, supra.*

To bolster its case, the state places a great amount of emphasis on what it terms the "negative inference" the jury could have drawn from the defendant's fabrication of the dog story. The state cites *Edwards v. State,* 46 Wis.2d 249, 174 N.W.2d 269 (1970), as authority for the proposition that the jury could have concluded from the defendant's admission that he lied to the police at the time of his arrest that his testimony at trial was not credible. Thus, the state argues, the jury not only could disbelieve the defendant's trial explanation for his presence in the neighborhood of the pharmacy soon after the burglary, but also that the truth is the opposite of his story. However, as the state concedes, "The absurd result [of letting a jury infer guilt from a claim of innocence] in some situations would be to convict the defendant even though the prosecutor had failed to present any evidence of guilt."

To avoid such a use of this inference, courts generally hold that a negative inference drawn from the witnesses' testimony is, standing alone, insufficient to support a conviction and that there must be independent support in the evidence for what is inferred. *See, e.g., United States v. Jenkins,* 510 F.2d 495, 499 (2d Cir. 1975);

*United States v. Scher*, 476 F.2d 319, 321–22 (7th Cir. 1973).

The principle that the negative inference drawn from the defendant's claim of innocence must be supported by independent evidence was stated by this court in the slightly different context present in *Peters v. State, supra*. There, the defendant, in a consolidated jury trial, was tried and convicted for burglary and obstruction of an officer. The latter offense was based upon a claim that an alibi relating to the defendant's whereabouts on the night of the burglary was fabricated. On appeal, the defendant argued that the burglary and obstruction charges were improperly consolidated for trial because it infringed on his constitutional right to present a defense to the burglary charge, particularly the alibi defense. With proper instructions to the jury, the court concluded that the charges could be joined for the purposes of trial and that evidence relating to the alibi would be admissible on the burglary count. But in doing so, the court stated:

"The probative value of such evidence on the burglary count is slight, but it does tend to show an awareness by the defendant that his defense to the main charge is so weak that he needs to fabricate evidence. From this awareness of weakness the trier of fact can legitimately infer a consciousness of guilt on the part of the defendant in regard to the main charge. *It must be emphasized, however, that fabrication of alibi cannot be relied upon by the state as affirmative proof of elements as to which it has the burden of proof. The state must prove beyond a reasonable doubt all elements of the crime of burglary by evidence independent and separate from the evidence relating to fabrication of alibi.*" *Peters v. State, supra* at 30–31. (Emphasis supplied).

Thus, although the slightly probative evidence relating to the fabrication of an alibi may be considered in deter-

mining the defendant's guilt on the burglary charge, the *Peters* decision held that "the jury must not employ such evidence as affirmative proof of elements of the crime of burglary . . ." and that "the state must introduce separate and independent evidence showing guilt beyond a reasonable doubt." *Peters v. State, supra* at 32.

Here, the jury could infer from the admission that the dog story was fabricated that Stewart and Williams believed that they could not tell the officers the true reason for their presence in the neighborhood a short time after the burglary. But this inference is of only slight probative value, and on an appeal to review the sufficiency of the evidence, the record must disclose other affirmative proof relating to each element from which the trier of fact may determine the defendant's guilt.

Even in light of this slightly probative negative inference, the evidence contained in this record is not sufficient to produce a reasonable and moral certainty that this defendant and no one else committed the burglary. Assuming that the hiking boot tracks were in some way related to the burglary, no evidence, aside from an officer's observation that Stewart's boots were of a type which would leave a print similar to those found in the vicinity of the pharmacy, was offered to establish that Stewart's boots in fact made the tracks. The similarity was based, the officer stated, on only a visual comparison: the officers did not physically take the shoe over to one of the footprints to make this comparison; and the boot print which was photographed by the police was not measured so as to permit one to determine that the shoes of the size Stewart was wearing could have made the prints. Indeed, two officers testified that these prints were a common hiking boot print.

There was also no evidence that the fingerprints of either Stewart or Williams were found in the pharmacy or that plaster dust was found on their clothing. No

footprints, either smooth or "waffle," were found in the plaster dust within the pharmacy or on the roof of the pharmacy. Finally, one officer testified that the area behind the building adjacent to the pharmacy, where some of the "waffle" footprints were found, was used by people to gain entrance to some of the buildings in the area and many different footprints were found there.

We conclude that this circumstantial evidence was not sufficient to permit the jury to conclude to a moral certainty the defendant perpetrated, either by himself or with another, the burglary and attempted theft which occurred at the Liberty Pharmacy.

The judgment of the trial court is reversed, with directions to dismiss the proceedings.

*By the Court.*—Judgment reversed, with directions to dismiss.