**Donald Lee JENTGES,**
**Petitioner-Appellant,**

v.

**MILWAUKEE COUNTY CIRCUIT COURT, Honorable Harold B. Jackson, Jr., presiding and the Attorney General of Wisconsin, Respondents-Appellees.**

**No. 83–1677.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 7, 1983.
Decided May 8, 1984.

Roy E. Wagner, Niebler & Niebler, Menomonee Falls, Wis., for petitioner-appellant.

Michael R. Klos, Asst. Atty. Gen., Wis. Dept. of Justice, Madison, Wis., for respondents-appellees.

Before CUDAHY, ESCHBACH and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

The petitioner, Donald Lee Jentges, was convicted of violating Wis.Stat. § 943.02, arson of a building, and Wis.Stat. § 943.04, arson with the intent to defraud, and sentenced to concurrent terms of eight and two-and-one-half years of imprisonment.

The Wisconsin Court of Appeals affirmed his conviction in an unpublished order and the Wisconsin Supreme Court denied the petitioner's request for review of that decision. Jentges filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 contending that: (1) the state presented insufficient evidence to permit the jury to find him guilty beyond a reasonable doubt; (2) that he was unconstitutionally deprived of a fair trial due to prosecutorial misconduct; and (3) that the Wisconsin Court of Appeals arbitrarily applied and ignored Wisconsin law in affirming his conviction, thereby denying him due process of law. The district court denied the petition. We affirm.

I.

On February 14, 1976, a fire occurred in a building where the petitioner-appellant, Donald Jentges, operated a sporting goods business occupying portions of the first floor and basement, located at 700 West Wisconsin Avenue, Milwaukee, Wisconsin. Jentges reported the fire to the fire department, and when questioned by police detectives regarding his knowledge of the fire's origin, Jentges stated that while in the basement filling orders he was struck on the head with a bat, knocked to the ground and rendered unconscious, robbed and tied up. He further stated that after regaining consciousness he noticed that the basement contained smoke and that after freeing himself he ran out of the basement to report the fire. The fire marshal later concluded that the fire was an arson in nature and originated in the basement area with at least eight separate points of ignition and also that the fire was fueled by petroleum accelerants. At trial, the fire marshal testified that upon investigation he observed paper trails and other flammable items leading to metal containers of petroleum products. He concluded that the trails were used to transfer the fire from one point to another and that it probably would have taken one person an hour to plan and implement the arson scheme. The petitioner Jentges did not testify at his trial

but the testimony he gave at the fire marshal's hearing was received as a prior statement. Jentges stipulated that he was cognizant of the fact that the destroyed merchandise was insured and that he filed a claim based on the loss. The state did not offer direct evidence that the petitioner set the fire and instead primarily relied upon the testimony of the investigating fire and police authorities and a State Crime Laboratory forensic chemist, all of whose testimony helped to establish the untruthfulness and implausibility of the petitioner's statements concerning the events leading to the fire.

## II.

### SUFFICIENCY OF THE EVIDENCE.

Our review of petitioner's claim that there was insufficient evidence to support his conviction is controlled by *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *Jackson* held that when a reviewing court must determine whether there is sufficient evidence to support a conviction,

> "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.... This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."

*Id.* at 319, 99 S.Ct. at 2789 (citation omitted, emphasis in original). *See also Greider. v. Duckworth*, 701 F.2d 1228, 1231–32 (7th Cir.1983); *Davis v. Franzen*, 671 F.2d 1056, 1057 (7th Cir.1982). This "reasonable doubt test requires the reviewing court to consider the evidence according to the prosecution's inferences." *United States v. Moya*, 721 F.2d 606, 610 (7th Cir.1983).

■ At trial the state introduced substantial evidence showing inconsistencies in the statements Jentges gave when reporting the fire, responding to questions from . fire and police investigators and at the fire marshal's hearing. The clear and logical inference from these conflicting statements was that his version of the events leading up to the fire was incredible, and thus his story was nothing more than a fabrication to hide his guilt. The inconsistencies in his statements included the number of robbers, the number of times he was allegedly struck with a bat causing him to lose consciousness and at what point during the attack he allegedly lost consciousness. Not only were his statements shown to be contradictory through the testimony of the police and fire authorities but the physical evidence, medical evidence and expert testimony were contrary to his version of the events and bolstered the inference that Jentges' story was nothing but a fabrication.

The fire marshal testified that due to the high intensity of the fire and the smoke produced, he did not believe that it was possible that the petitioner could have traveled the 150 feet from the point where he allegedly regained consciousness to the basement exit without suffering disabling smoke inhalation and burns. The forensic chemist testified that the laboratory examination of the petitioner's clothing failed to establish that his clothing had been in contact with the type of oily smoke generated by a fire of this nature much less in contact with the dirty boiler room floor where the petitioner stated he laid before regaining consciousness. Nor did the laboratory examination support Jentges' statement to police that his assailant poured liquid shoe polish over Jentges' back after he was tied up. No shoe polish liquid residue or stains were found on his clothing. The petitioner's physical appearance immediately after the fire, was shown to be unlike that of a person who had been exposed to and allegedly inhaled smoke as the petitioner was not coughing nor were his eyes watering. The medical evidence showed that the minor head injury he somehow suffered and was treated for was at odds with his claim that he had been violently struck numerous times with a bat. Additionally, while Jentges estimated he lost consciousness for

about twenty minutes, it is interesting to note that almost an hour passed between the time of his alleged attack and when he reported the fire, leaving about forty minutes unaccounted for. Our review of the record leads us to conclude that there was more than sufficient evidence for the trier of fact to conclude that the state proved each and every element of the crimes charged beyond a reasonable doubt.

■ The petitioner also contends that his conviction cannot be based upon circumstantial evidence since the state was unable to prove a motive for the arson. Wisconsin case law does not support this novel theory of the law, in fact any criminal conviction in Wisconsin including arson can be based in whole or in part on circumstantial evidence. *State v. Koller,* 87 Wis.2d 253, 266, 274 N.W.2d 651 (1979). Wisconsin Jury Instruction—Criminal, Number 170, which was read to the jury in this case, reads in part that "circumstantial evidence may be stronger and more convincing than direct evidence." *See also Peters v. State,* 70 Wis.2d 22, 33, 233 N.W.2d 420 (1975). Our court has recently reiterated this principle in *United States v. Bradshaw,* 719 F.2d 907 (7th Cir.1983), stating that " '[c]ircumstantial evidence is as pertinent as direct evidence to the establishment of guilt or innocence.' " *Id.* at 921 (quoting *United States v. Cogwell,* 486 F.2d 823, 828 (7th Cir.1973), *cert. denied,* 416 U.S. 959, 94 S.Ct. 1975, 40 L.Ed.2d 310 (1974)). The judge also cautioned the jury in this case that "[e]ach of the several circumstances relied upon by the state must be proven to you beyond a reasonable doubt, and these circumstances must not only point with moral certainty to the guilt of the defendant, but must exclude every reasonable hypothesis of innocence."

Finally, with regard to the petitioner's argument that the state failed to prove motive,

> "[m]otive is not an element of any crime and it does not by itself establish guilt or innocence. But evidence of motive is relevant if it meets the same standards of relevance as other evidence. Motive is

an evidentiary circumstance which may be given as much weight as the fact finder deems it entitled to."

*State v. Berby,* 81 Wis.2d 677, 686, 260 N.W.2d 798 (1978). The petitioner's arguments must therefore fail.

■ We likewise reject the petitioner's argument that reversal is compelled because the state's evidence merely demonstrated that petitioner's story was a fabrication and failed to provide the required affirmative proof of guilt. In essence, petitioner contends that the state merely disproved his story without establishing that he had in fact committed the crimes charged. In support of his argument, petitioner relies upon two Wisconsin cases, *Stewart v. State,* 83 Wis.2d 185, 265 N.W.2d 489 (1978) and *Peters v. State,* 70 Wis.2d 22, 233 N.W.2d 420 (1975). These cases embrace "[t]he principle that [a] negative inference drawn from [a] defendant's claim of innocence must be supported by independent evidence...." *Stewart,* 83 Wis.2d at 194, 265 N.W.2d at 493. Both *Peters* and *Stewart* are factually distinguishable as they involved situations where the state failed to introduce proof placing the defendants at the scene of the crime and instead the state merely established that the defendant's alibi defenses were fabrications. This is in sharp contrast to the present fact situation wherein Jentges was, through his own admission, present in the building where a fire determined to be arson in nature occurred and the state proved that his version of how the fire was ignited was a fabrication. The legal principle underlying the theory of the law requires the state to provide independent evidence in addition to the negative inference that Jentges himself committed the arson. We agree that the state met this burden.

"While a conviction based solely upon the disbelief of [a] defendant's statements cannot stand, this does not make such disbelief irrelevant." *United States v. Green,* 680 F.2d 520, 523–24 (7th Cir.1982). In its review of the adequacy of the evidence presented by the state, the district court stated that "the petitioner's presence at the

scene of the crime, along with the fact that the time element necessary to carry out the elaborate arson scheme employed was consistent with the time unaccounted for by the petitioner (approximately forty minutes), was sufficient independent evidence which gave support for any negative inferences leading to the petitioner's conviction." We are in accord. If the petitioner's statements regarding the alleged assault and burglary were false, and he admitted that he was present in the building at the time when the elaborate arson scheme was carried out, it was reasonable for the trier of fact to conclude that Jentges committed the arson.

### III.

### PROSECUTORIAL MISCONDUCT.

The petitioner points to three instances of alleged prosecutorial misconduct which he contends deprived him of his right to a fair trial. The petitioner first argues that the evidence introduced at trial did not support statements made by the prosecutor during his opening statement. Relying on *Frazier v. Cupp*, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1968), the district court ruled that the petitioner's argument was without merit since the statements with which the petitioner takes issue were for the most part addressed during the state's case-in-chief, and while some of the facts mentioned by the state during its opening remarks were not proved word-for-word, they could be logically inferred from evidence presented during the trial. These remarks concerned the intensity of the conflagration at the time the firefighters arrived, whether the petitioner had held a sale just prior to the fire, whether petitioner filed an excessive insurance claim and whether the petitioner told authorities that his assailants splashed kerosene around him. The court also dismissed the petitioner's contention that the prosecutor's closing argument was not an accurate portrayal of the evidence introduced at trial since the prosecutor's statements were substantially supported by the testimony. The specific statement at issue concerns the amount of smoke present in the basement when the petitioner allegedly regained consciousness.

■ In *United States v. Carter*, 720 F.2d 941 (7th Cir.1983), our court recently reiterated the proper standard to be applied when determining whether a prosecutor's comments deprived an accused of a fair trial. There we recognized that:

"To determine whether the prosecutor's comments were so egregious as to require reversal, we must ask whether the

'statements were so inflammatory and prejudicial to the defendant petitioner as to deprive him of a fair trial and thus deprive him of his liberty without due process of law as proscribed by the Fourteenth Amendment. The standard for the court to apply in making a determination of whether the petitioner was afforded a fair trial is [by] jurisprudential necessity a broad one.... [E]ach case must be decided on its unique facts.'

*United States v. Zylstra*, 713 F.2d 1332 at 1339 (7th Cir.1983); *United States ex rel. Clark v. Fike*, 538 F.2d 750, 760 (7th Cir.1976), *cert. denied*, 429 U.S. 1064, 97 S.Ct. 791, 50 L.Ed.2d 781 (1977). 'It is thus necessary to examine the allegedly prejudicial remarks of the prosecutor in the context of the trial as a whole.' *United States ex rel. Garcia v. Lane*, 698 F.2d 900, 902 (7th Cir.1983)."

*Id.* at 950. We have reviewed the alleged prejudicial statements made during the opening statement and closing argument in the context of the entire trial record and hold that the petitioner was not deprived of his right to a fair trial and agree with the ruling of the district court. We likewise agree and hold that the trial court's instructions to the jury made it clear that the opening and closing statements are not to be considered as evidence and thus negated any damage that may have occurred as a result of the alleged misstatements made by the prosecutor.

The petitioner-appellant's final allegation of prosecutorial misconduct concerns the prosecution's cross-examination of a defense witness, Dr. Algiers, Jentges' family physician who was certified in internal medicine. The prosecutor questioned Dr. Algiers about entries in the petitioner's hospital records that the petitioner's blood pressure and pulse rate increased during questioning by two police detectives in a hospital emergency room. The prosecutor asked the doctor whether an elevated blood pressure and pulse rate are taken into consideration in polygraph examinations. The doctor responded affirmatively. The petitioner's counsel at this point failed to make a timely objection to this line of questioning and in fact did not object to the questions until several hours later (after another two witnesses had testified and a recess was taken), when he moved for a mistrial. Further, the defense counsel failed to request any precautionary instruction and in effect thought the issue was unimportant since he did not raise it again until he submitted post-verdict motions. Thus, on appeal the Wisconsin Court of Appeals held that "Jentges' failure to timely object to the introduction of testimony about what a polygraph measures constitutes a waiver of any objection." [1]

Indeed, the Wisconsin Supreme Court has held "that an objection must be made as soon as the opponent [has reason to] be aware of the objectionable nature of the testimony" and that the "[f]ailure to object results in a waiver of any contest to that evidence." *Holmes v. State*, 76 Wis.2d 259, 272, 251 N.W.2d 56 (1977). The failure to object in a timely manner does not allow a trial court to take immediate corrective action if necessary and thus "constitutes a waiver of any possible objection." *Id. See also State v. Wedgeworth*, 100 Wis.2d 514, 528, 302 N.W.2d 810 (1981); *U.S. v. Weed*, 689 F.2d 752, 756 (7th Cir.1982). While the petitioner argues that the trial court could have taken corrective action by granting his motion for a mistrial, a severe remedy, the proper corrective action could have been achieved if the defense counsel made a timely objection to the reference that he considered objectionable and requested that the court instruct the jury to disregard the reference to a polygraph examination. By not making a contemporaneous objection and requesting a cautionary instruction the petitioner lost the benefit of such an instruction.

■ Upon our review of the petitioner's habeas corpus claim, we must adhere to the principle that:

" '[i]f a state withholds the right of appellate review of issues not raised at trial, the federal courts will not undermine the state's interest in orderly procedure by allowing the defendant to litigate the issue in a federal habeas proceeding.' *Carbajol v. Fairman*, 700 F.2d 397, 399 (7th Cir.1983). Thus, as the United States Supreme Court has stated, 'when a procedural default bars state litigation of a constitutional claim, a state prisoner may not obtain federal habeas relief absent a showing of cause and actual prejudice.' *Engle v. Isaac*, 456 U.S. 107, 129 [102 S.Ct. 1558, 1572, 71 L.Ed.2d 783] (1982) (*'Engle'*). *See also Sumner v. Mata*, 449 U.S. 539, 547 [101 S.Ct. 764, 769, 66 L.Ed.2d 722] (1981); *Wainwright v. Sykes*, 433 U.S. 72, 86–87 [97 S.Ct. 2497, 2506–2507, 53 L.Ed.2d 594] (1977); *Farmer v. Prast*,

---

1. As noted in the text, the basis for the Wisconsin Court of Appeals' affirmance of petitioner's conviction as to this claim was petitioner's failure to object in a timely manner; however, the court did note that "[e]ven if Jentges had not waived his objection ... the error in permitting the improper questioning was harmless beyond a reasonable doubt." *Jentges v. State*, 80–648–CR at 13 (Wis.Ct.App. Feb. 24, 1981). Thus, the basis for the Wisconsin Court of Appeals decision was petitioner's failure to object at trial, which is a valid independent ground barring federal review absent a showing of cause and actual prejudice. In *Farmer v. Prast*, 721 F.2d 602, 605 (7th Cir.1983) this court stated that "[f]ederal habeas corpus is precluded when the state appellate court affirms a trial court decision on the twin grounds of lack of merit in the constitutional claim and of the appellant's failure, without justification, to comply with a state procedural rule." *See also United States ex rel. Veal v. DeRobertis*, 693 F.2d 642, 650 (7th Cir. 1982); *United States ex rel. Williams v. Franzen*, 687 F.2d 944, 951 (7th Cir.1982).

721 F.2d 602, 605 (7th Cir.1983); *Sanders v. Israel,* 717 F.2d 422, 424 (7th Cir. 1983)."

*Weber v. Israel,* 730 F.2d 499, 502 (7th Cir.1984). In the instant case the petitioner has presented this court with no showing of cause and actual prejudice, nor are we able to discern any cause or prejudice upon our independent review of the record. Accordingly, we hold that the petitioner's failure to file a timely objection at trial to the prosecutor's reference to a polygraph, bars this court from reviewing such evidence in this habeas corpus action.[2]

The petitioner further contends that the aggregate effect of the prosecutor's alleged errors warrants a mistrial. The Supreme Court has recently recognized that "taking into account the reality of the human fallibility of the participants, there can be no such thing as an error-free, perfect trial, and that the Constitution does not guarantee such a trial." *United States v. Hastings,* 461 U.S. 499, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96 (1983). The Constitution guarantees a fair trial, not a perfect one and our review of the record compels us to conclude that the petitioner received a fair trial.

### IV.

The petitioner finally argues that the Wisconsin Court of Appeals arbitrarily decided the prosecutorial misconduct issue, arbitrarily ignored the rules on contemporaneous objections, ignored precedent on the sufficiency of evidence and ignored precedent in refusing to give a requested jury instruction. We find no merit in these arguments which are essentially a repeat of his other arguments which we have already addressed. The district court correctly ruled that the application of state law is a matter for a state's supreme court to correct and it is only when a state court arbitrarily or discriminatorily applies state law that a federal court is justified in finding a constitutional violation. In *United*

*States ex rel. Burnett v. People of the State of Ill.,* 619 F.2d 668 (7th Cir.), *cert. denied,* 449 U.S. 880, 101 S.Ct. 229, 66 L.Ed.2d 104 (1980), which the district court relied upon in its decision, we stated that we would "not take the extraordinarily intrusive action of setting aside a state criminal conviction in the guise of due process review, simply because we disagree with the state court's interpretation of state law." *Id.* at 671. After reviewing the record in this case and the decision of the Wisconsin Court of Appeals, we hold that the Court of Appeals' action was proper in denying petitioner's request for a reversal of his conviction.

WE AFFIRM.

---

**2.** While we do not reach the merits of the petitioner's claim that the prosecutor's reference to a polygraph constituted reversible error, our

decision is in no way meant to condone the prosecutor's line of questioning in the instant case.