State of Wisconsin, Plaintiff-Respondent,
v.
Maurice L. Floyd, Defendant-Appellant.
No. 04-0854-CR.
Court of Appeals of Wisconsin.
Opinion Filed: February 1, 2005.
Before Cane, C.J., Hoover, P.J., and Peterson, J.
¶1 PER CURIAM.
Maurice Floyd appeals a judgment convicting him of arson and an order denying his motion for postconviction relief. Floyd argues: (1) there was insufficient evidence to support the conviction; (2) the circuit court erroneously excluded evidence that he offered to take a polygraph or, alternatively, his trial counsel was ineffective for failing to challenge the State's motion to exclude the evidence; (3) he should receive a new trial because of improper closing argument by the State; (4) he should receive a new trial in the interest of justice; and (5) the circuit court erroneously exercised its sentencing discretion when it sentenced him to fifteen years' confinement. We disagree and affirm the judgment and order.

BACKGROUND
¶2 On September 1, 2001, a fire was intentionally started at a house located at W7709  170th Avenue in Trenton Township.[1] At the time, Floyd lived in the house next door along with his girlfriend, Crystal McMullen, her daughter, Sydney, and his brother, Randall Floyd.
¶3 At 10:54 p.m. on September 1, Jeremy Brookshaw of the Pierce County Sheriff's Department was dispatched to investigate the fire. Brookshaw contacted another officer, Bruce Von Haden, who joined him. Von Haden questioned Floyd and McMullen about the fire. Floyd was belligerent and appeared to have been drinking. Floyd told Von Haden that he had been in the basement of his home with Randall, that Randall had smelled smoke, went outside and saw the fire, and called the police. Floyd denied going near the burning house.
¶4 On September 2, 2001, William Boswell, an arson investigator with the Wisconsin Department of Justice, went to the fire scene with Von Haden. Boswell concluded that two separate fires were started, one at a side window and one in the living room. He also found a footprint on the front door of the house, indicating the door had been kicked in. Boswell talked to Floyd and asked if it was Floyd's shoe print on the door and if he had kicked in the door. Floyd denied the shoe print was his or even having been near the house. Floyd also told Boswell that he does "stupid things" when he is drinking but would never start a fire.
¶5 Boswell and Von Haden noticed that at some point on September 2, Floyd had changed shoes. They asked Floyd for the shoes he had been wearing earlier that day. Later, those shoes were analyzed by the crime lab, and tests confirmed that the shoe print on the door was consistent with the shoes taken from Floyd.
¶6 Von Haden tried to contact Floyd again on September 11, but Floyd had moved back to Illinois, where he resided before moving to Wisconsin. Floyd never reported to work after the fire and was terminated from his employment.
¶7 On May 3, 2002, Floyd was charged with arson, contrary to WIS. STAT. § 943.02(1)(a), and an arrest warrant was issued.[2] On August 30, 2002, Fred Thatcher, an Illinois state police officer, arrested Floyd on the Wisconsin warrant after a routine traffic stop. Floyd told Thatcher that Randall started the fire by throwing gas in a window and lighting it with a cigarette lighter.
¶8 On September 19, 2002, Von Haden spoke to Floyd while transporting him from Illinois to Wisconsin. At that time, Floyd claimed Randall had started the fire, though he did not know how. Floyd said he had kicked in the door to the burning house because he was "playing hero."
¶9 On January 8, 2003, a jury trial commenced. At trial, Doris Hinck testified that she had driven past the house on the night of the fire. Hinck left her house sometime between 9:30 and 10 p.m. and was gone for twenty minutes. She thought she saw flames through the window when she drove past the house on the way into town, but did not stop until the trip back. She saw the fire on the side of the house, but nothing from the front. She also asked a male standing outside, later identified as Floyd, if she should call the police. Floyd told her not to call and hollered at her to mind her own business.
¶10 McMullen testified that, on the night of the fire, Floyd told her that Randall started a fire at the house next door and told her and Sydney to leave for a while. It was dark when McMullen and Sydney left, and they were gone forty-five minutes to an hour.[3] When they returned to their house, the fire trucks had arrived. McMullen testified that she had not been truthful in interviews with investigators due to her concern about losing custody of Sydney, because she was in the process of getting divorced. She also testified that the reason she and Floyd left Wisconsin was because Sydney was not happy.
¶11 Floyd testified that on the night of the fire he was in the basement of his home, he came upstairs and Randall told him about the fire. Floyd testified that he kicked in the door of the burning house and hollered to see if anyone was inside. He told Randall to call 911 and told McMullen to take Sydney and leave. Floyd also admitted to lying to police, but explained that he did so because he did not want to get involved and thought that Randall would come forward to take responsibility for the fire.

DISCUSSION

Sufficiency of the Evidence
¶12 Floyd argues there is insufficient evidence to support his conviction. When we review whether there is sufficient evidence to support a conviction, "[t]he test is not whether this court or any of the members thereof are convinced [of the defendant's guilt] beyond reasonable doubt, but whether this court can conclude the trier of facts could, acting reasonably, be so convinced by evidence it had a right to believe and accept as true." State v. Poellinger, 153 Wis. 2d 493, 503-04, 451 N.W.2d 752 (1990). We view the evidence in the light most favorable to the conviction. State v. Burroughs, 2002 WI App 18, ¶14, 250 Wis. 2d 180, 640 N.W.2d 190. "It is the function of the trier of fact, and not of an appellate court, to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Poellinger, 153 Wis. 2d at 506. We do not substitute our judgment for that of the trier of fact unless the evidence "is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." Id. at 507. Our standard of review is the same regardless of whether the trial evidence was direct or circumstantial. Id. at 501-02.
¶13 Floyd relies on Stewart v. State, 83 Wis. 2d 185, 265 N.W.2d 489 (1978), to argue that since there was no direct evidence that he committed the arson, his conviction impermissibly rested on a negative inference drawn from his admitted lie to police about kicking in the door. In Stewart, the State argued that because Stewart lied to the police when he fabricated an alibi, the jury could have concluded that his trial testimony was not credible and, further, that the truth was the opposite of his story. Id. at 193. The court concluded that any negative inferences drawn from Stewart's lie could not, by themselves, support his conviction and that the State was required to produce "separate and independent evidence" of his guilt. Id. at 195. Floyd concludes that Stewart requires the State to "produce direct, explicit evidence" of Floyd's guilt.
¶14 Floyd reads Stewart too broadly. Direct evidence is never required for conviction, as "[i]t is well established that a finding of guilt may rest upon evidence that is entirely circumstantial...." Poellinger, 153 Wis. 2d at 501. Additionally, by its own language, Stewart requires "separate and independent evidence," not direct evidence. Stewart, 83 Wis. 2d at 195.
¶15 Floyd's argument also ignores the separate and independent evidence presented at trial.[4] The shoe print on the door showed Floyd was at the house. Hinck's testimony placed Floyd near the burning house well before police arrived at the scene.[5] Hinck also testified to seeing a fire at the side of the house, not the front, allowing the jury to infer that the second fire in the living room had not yet been set. Floyd told her not to call police and to mind her own business. The jury heard evidence that Floyd was drunk and angry around the time of the fire, had been fighting with McMullen and was uncooperative with police. After the fire, Floyd did not return to work and moved to Illinois. We conclude that this evidence, along with Floyd's pattern of lies, is sufficient to support his conviction.
¶16 Floyd also argues that there was direct evidence that Randall started the fire, and thus there was insufficient evidence to convict him.[6] In essence, Floyd asks us to believe his and McMullen's testimony that Randall committed the crime. Floyd's argument ignores our standard of review. The jury, not this court, is the ultimate arbiter of witness credibility and the weighing of evidence. WIS JICRIMINAL 300. We do not substitute our judgment for the jury's unless the evidence "is so lacking in probative value" that a reasonable jury could not have convicted. Poellinger, 153 Wis. 2d at 507. Both Floyd and McMullen admitted to repeatedly lying to police and investigators. The jury could reasonably have found their testimony not credible.

Floyd's Offer to Take a Polygraph
¶17 Floyd argues his offer to take a polygraph was admissible or, alternatively, his trial counsel was ineffective for failing to oppose the State's motion to exclude that evidence.[7] The circuit court concluded that Floyd failed to present sufficient facts to show his offer to take a polygraph was admissible and that Floyd was not prejudiced by the exclusion of the evidence.
¶18 Because Floyd's trial counsel did not oppose the State's motion to exclude evidence of his offer to take a polygraph, Floyd has waived his right to challenge the circuit court's ruling on the admissibility of the evidence. See State v. Schmaling, 198 Wis. 2d 756, 762, 543 N.W.2d 555 (Ct. App. 1995) (defense counsel's acquiescence acts as waiver). Accordingly, our review is limited to whether Floyd was denied the effective assistance of counsel.
¶19 Our review of an ineffective assistance claim presents a mixed question of fact and law. State v. Erickson, 227 Wis. 2d 758, 768, 596 N.W.2d 749 (1999). We do not disturb the circuit court's findings of fact unless they are clearly erroneous. Id. However, whether the attorney's conduct amounts to ineffective assistance is a question of law that we review independently. Id.
¶20 To establish ineffective assistance of counsel, a defendant must show both that trial counsel's performance was deficient and that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 697 (1984); State v. Pitsch, 124 Wis. 2d 628, 633, 369 N.W.2d 711 (1985). Performance is deficient if it falls outside the range of professionally competent representation. Pitsch, 124 Wis. 2d at 636. We measure performance by the objective standard of what a reasonably prudent attorney would do in similar circumstances. Id. at 636-37. Prejudice requires more than just a showing of a conceivable effect on the outcome of the trial. Erickson, 227 Wis. 2d at 773. Rather, the defendant must allege facts establishing that, but for the attorney's deficient performance, there was a reasonable probability of a different trial outcome. Id. If an appellant fails to establish one prong of the analysis, we need not address the other. State v. Reed, 2002 WI App 209, ¶14, 256 Wis. 2d 1019, 650 N.W.2d 885.
¶21 Without deciding whether counsel's performance was deficient, we conclude that Floyd has not demonstrated he was prejudiced. Floyd's postconviction motion fails to allege sufficient facts to show that his offer was admissible and, therefore, that he was prejudiced by his counsel's failure to oppose its exclusion. "When the offer to take a polygraph test originates with the defendant and is accompanied by the defendant's belief that the test result or analysis is `possible, accurate and admissible,' it is probative as `consciousness of [the defendant's] innocence'" and thus may be admissible. State v. Pfaff, 2004 WI App 31, ¶29, 269 Wis. 2d 786, 676 N.W.2d 562 (citation omitted). It is uncontested that Floyd made the offer spontaneously while being transported from Illinois to Wisconsin. However, Floyd did not show that, when he made the offer, he believed the test was "possible, accurate and admissible." See id.
¶22 Floyd argues that because he made the offer spontaneously before he had counsel, his offer inherently shows that he believed the test was possible, accurate and admissible. However, Floyd's argument eliminates the belief requirement of the test for admissibility. Because Floyd has presented no evidence regarding his belief, the circuit court could not determine whether his offer was admissible as probative of his consciousness of innocence or was "a mere hollow gesture" because he knew the test results were not admissible or thought he could beat the test. See State v. Santana-Lopez, 2000 WI App 122, ¶5, 237 Wis. 2d 332, 613 N.W.2d 918.
¶23 Further, Floyd has not demonstrated that admission of his offer was likely to have affected the outcome of his trial. See Erickson, 227 Wis. 2d at 773. We agree with the circuit court's conclusion:
Given the number of lies that [Floyd] admitted to and that were brought to the attention of the jury, there is no reason to believe the jury would have given any more than just the slightest breadth of weight to his claim that he offered to take the polygraph because he was innocent.
Floyd's offer to take a polygraph is no more than a protestation of innocence in a different form and exclusion of that evidence was not prejudicial. Because Floyd has failed to satisfy the prejudice prong, his claim of ineffective assistance fails. See Reed, 256 Wis. 2d 1019, ¶14.

State's Closing Argument
¶24 Floyd argues he should be granted a new trial because the prosecutor made an improper closing argument. Floyd contends the State's references to a fight he had with McMullen on the night of the fire, including that he slapped her and broke a table, were not supported by evidence and were highly prejudicial.[8]
¶25 The State argues Floyd has waived review of this issue because Floyd did not object. "[W]hen a timely objection is not made challenging the closing remarks of the prosecutor, a defendant waives his or her right to review on that issue." State v. Guzman, 2001 WI App 54, ¶25, 241 Wis. 2d 310, 624 N.W.2d 717. A timely objection affords the court the opportunity to correct any potential error. Id. Floyd's trial counsel testified at the Machner hearing that he did not object to the closing argument because he did not want to highlight the improper statements to the jury. Floyd argues that he should not be denied review due to his counsel's reasonable strategy to minimize the harm of the State's improper conduct, citing State v. Gary M.B., 2003 WI App 72, 261 Wis. 2d 811, 661 N.W.2d 435, aff'd, 2004 WI 33, 270 Wis. 2d 62, 676 N.W.2d 475.[9]
¶26 Floyd's reliance on Gary M.B. is misplaced. In that case, we determined that a defendant did not waive review of a ruling on the admissibility of evidence when the defendant chose to preemptively introduce the challenged evidence at trial in order to lessen its detrimental impact. Id., ¶¶12, 16. There was no strategic waiver because there was no choice: the evidence was going to be admitted, whether it was by the defendant or by the State. Id., ¶¶12, 13. Additionally, because the court had already ruled on the admissibility of the evidence, Gary M.B. did not implicate concerns about giving the court an opportunity to correct any potential error.
¶27 Because Floyd did not object to the State's closing arguments, our review of this issue is limited to whether Floyd's trial counsel was ineffective for failing to object to the State's closing argument. Floyd concedes that trial counsel's decision not to object was a reasonable strategic decision. Consequently, counsel's performance was not deficient and Floyd's claim of ineffective assistance fails. See State v. Felton, 110 Wis. 2d 485, 502-03, 329 N.W.2d 161 (1983) (attorney's strategic decision, rationally based on the facts of the case and the law, is not deficient performance) and Reed, 256 Wis. 2d 1019, ¶14 (when ineffective assistance claim fails on one prong, we need not discuss the other).
¶28 Nonetheless, Floyd argues that he was prejudiced and is entitled to a new trial. Floyd relies on State v. Smith, 2003 WI App 234, 268 Wis. 2d 138, 671 N.W.2d 854. He contends that, like Smith's, his was a very close case that hinged on his credibility and the prosecutor's comments undermined the reliability of the proceedings. However, we conclude that the prosecutor's conduct here does not demand the same result as in Smith. Here, the prosecutor's references to the fight were limited and fleeting. Further, no reasonable jury is likely to conclude Floyd is an arsonist because he broke a table or slapped his girlfriend. The jury was also cautioned that attorneys' arguments, conclusions or opinions are not evidence. See State v. Smith, 170 Wis. 2d 701, 719, 490 N.W.2d 40 (Ct. App. 1992) (we presume that a jury follows instructions given).

New Trial in Interest of Justice
¶29 Floyd argues that he is entitled to a new trial in the interest of justice under WIS. STAT. § 752.35.[10] He contends that the combination of the exclusion of his offer to take a polygraph, the prosecutor's improper closing arguments and the lack of evidence to support the conviction, taken together, have prevented the actual controversy from being tried. However, Floyd's arguments rest on allegations of error that we have already concluded have no merit. Nor does Floyd's brief explain how these alleged errors should undermine our confidence in the outcome of the trial. See State v. Pettit, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (need not address inadequately briefed issues). The issue of whether Floyd or his brother set the fire was fully and fairly tried, and we decline to use our discretionary power of reversal under the facts of this case.

Sentencing
¶30 Floyd argues that his sentence of fifteen years' confinement is excessive, unduly harsh and not supported by sufficient reasoning by the court. Sentencing is within the discretion of the circuit court and we reverse only if it erroneously exercised that discretion. State v. Echols, 175 Wis. 2d 653, 681, 499 N.W.2d 631 (1993). There is a strong public policy against interfering with the circuit court's sentencing discretion and therefore we begin with the presumption that the circuit court acted reasonably. Id. at 681-82. The court has discretion to determine the length of sentence within the range set by legislature, and the court erroneously exercises that discretion "only where the sentence is so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment." See Ocanas v. State, 70 Wis. 2d 179, 185, 233 N.W.2d 457 (1975).
¶31 Floyd contends that fifteen years' confinement is excessive. However, the maximum term of confinement for arson at the time of Floyd's conviction was forty years. See WIS. STAT. §§ 943.02(1)(a) and 973.01(2)(b)1. (1999-2000).[11] Floyd's sentence was well within the permissible range set by statute. See State v. Daniels, 117 Wis. 2d 9, 22, 343 N.W.2d 411 (Ct. App. 1983) (sentence well within statutory limits is not excessive). While Floyd claims the arson was not aggravated, the circuit court properly considered that it was a residential arson committed without knowing whether the house was occupied and was therefore serious.
¶32 Floyd also contends the circuit court erred by failing to explain why it was not following the presentence investigation report recommendation of seven years' confinement. While the circuit court must explain its reasons for the sentence it imposes, State v. Gallion, 2004 WI 42, ¶46, 270 Wis. 2d 535, 678 N.W.2d 197, it has no obligation to explain why it chooses to deviate from a presentence investigation report recommendation. State v. Johnson, 158 Wis. 2d 458, 469, 463 N.W.2d 352 (Ct. App. 1990).
¶33 The record reveals the circuit court considered appropriate factors, see Harris v. State, 75 Wis. 2d 513, 519-20, 250 N.W.2d 7 (1977), and adequately explained the reasoning for the sentence it imposed. The court considered the seriousness of a residential arson. It also considered Floyd's long history of criminal conduct and his failure to address his substance abuse problems. The court determined Floyd had a very high risk of re-offending because of his past crimes and his failure to take responsibility for those crimes and, thus, posed a threat to the public. The court concluded, given Floyd's character and the need to protect the public, he should be confined until he reaches his mid-sixties and imposed sentence accordingly. Because the sentence imposed reflects an appropriate exercise of the circuit court's discretion, we do not disturb it.
By the Court.  Judgment and order affirmed.
NOTES
[1] Floyd does not contest that the fire was arson; his defense was that he was not the person who started the fire.
[2] All references to the Wisconsin Statutes are to the 2003-04 version unless otherwise noted.
[3] However, Syndey testified that they left about 9:30 p.m., were gone about one-half hour and returned around 10 p.m. She also testified they might have gotten home at 11 p.m.
[4] Floyd's argument also seems to be premised on his telling one liethat he did not kick in the doordespite evidence at trial that he told numerous lies to police about the events of September 1.
[5] Hinck estimated she left home between 9:30 and 10 p.m. and was gone twenty minutes. Thus, her contact with Floyd was sometime between 9:50 and 10:20 p.m. Brookshaw was not dispatched until 10:54 p.m. and was the first to arrive at the scene.
[6] The "direct evidence" Floyd points to is his and McMullen's testimony. However, neither testified to seeing Randall start the fire. Floyd testified Randall told him he started the fire. McMullen testified that Floyd told her Randall started the fire, that Randall had taken a shower the night of the fire because he smelled like smoke and that he never returned home after she drove him to Red Wing, Minnesota, several days after the fire.
[7] At the Machner hearing, trial counsel testified that he was unaware that an offer to take a polygraph was potentially admissible evidence. See State v. Machner, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979).
[8] Both McMullen and Sydney testified that Floyd and McMullen had a fight the night of the fire. Sydney also testified that Floyd broke a table. There was no direct testimony regarding whether Floyd hit McMullen.
[9] Floyd also argues that he should not be deemed to have waived review because there was no opportunity to object outside the presence of the jury. However, Floyd could have moved for a mistrial outside the presence of the jury.
[10] WISCONSIN STAT. § 752.35 provides:

In an appeal to the court of appeals, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record and may direct the entry of the proper judgment or remit the case to the trial court for entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice.
[11] The legislature has since reclassified arson from a Class B felony to a Class C felony, with a maximum total sentence of forty years, including twenty-five years of initial confinement. See WIS. STAT. §§ 943.02(1)(a), 939.50(3)(c) and 973.01(2)(b)3.