STATE of Wisconsin, Plaintiff-Respondent,

v.

Charles J. BURROUGHS, Defendant-Appellant.†

Court of Appeals

*No. 01–0738–CR. Submitted on briefs November 20, 2001.—
Decided December 19, 2001.*

2002 WI App 18

(Also reported in 640 N.W.2d 190.)

† Petition to review denied 4-22-02.

180

Before Nettesheim, P.J., Brown and Anderson, JJ.

¶ 1.  NETTESHEIM, P.J.  Charles J. Burroughs appeals from a judgment of conviction for kidnapping and attempted first-degree sexual assault with the use of a dangerous weapon contrary to WIS. STAT. §§ 940.31(1)(b) and 940.225(1)(b), as a habitual criminal pursuant to WIS. STAT. § 939.62(2) (1999–2000).[1] Burroughs additionally appeals his life sentence without possibility of parole pursuant to the "persistent repeater" statute or "three strikes" law, § 939.62(2m)(b), (c), and the trial court's order denying his motion for postconviction relief.

¶ 2.  Burroughs raises three arguments on appeal. First, Burroughs challenges the sufficiency of the evidence on the "confinement" element of the kidnapping charge. We reject Burroughs' argument. We conclude there was sufficient evidence that Burroughs confined his victim, Sharon B., by depriving her of freedom of movement and compelling her to remain where she did not wish to remain.

¶ 3.  Burroughs' second and third challenges pertain to his sentence of life without the possibility of parole as a "persistent repeater" under the "three strikes" law, WIS. STAT. § 939.62(2m)(c). Specifically, Burroughs challenges the use of his conviction in 1975 in the state of Alabama for "assault with intent to murder" as one of the prior "serious felony" convictions pursuant to § 939.62(2m)(b)1. Burroughs contends the Alabama conviction was not "comparable" to any "serious felony" set out in Wisconsin law as required by § 939.62(2m)(d). Burroughs further contends that there is insufficient evidence to demonstrate that his

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

plea underlying the Alabama conviction was entered freely and voluntarily. We reject Burroughs' arguments on this issue. We conclude that Burroughs' prior conviction is comparable to the Wisconsin felony of attempted murder and that, pursuant to *State v. Hahn*, 2000 WI 118, 238 Wis. 2d 889, 618 N.W.2d 528, *reconsideration denied*, 2001 WI 15, 241 Wis. 2d 214, 626 N.W.2d 810 (Feb. 7), *opinion clarified*, 2001 WI 6, 241 Wis. 2d 85, 621 N.W.2d 902 (Feb. 9) (No. 99–0554–CR), the trial court need not determine whether Burroughs' plea was entered freely or voluntarily because Burroughs was represented by counsel. We therefore conclude that Burroughs' Alabama conviction provided a proper basis for the repeater portion of his conviction.

¶ 4.   We affirm the judgment of conviction and the order denying Burroughs' motion for postconviction relief.

### FACTS

¶ 5.   The evidence at the jury trial established the following facts. The crimes charged against Burroughs occurred during the early morning hours of February 10, 1996. The victim, Sharon B., had met Burroughs prior to that date through her cousin, Lisa. Sharon understood Burroughs to be Lisa's boyfriend. On February 9, Sharon's aunt called her to inform her that Lisa was missing and to ask if Sharon would help Burroughs look for Lisa. Sharon agreed and accompanied Burroughs to two bars and an apartment where he believed Lisa might be hanging out. Their search was unsuccessful and Burroughs returned Sharon to her residence. At that time, Burroughs asked Sharon if he could call her if he found Lisa so that Sharon could

accompany him to bring her home. Sharon agreed, knowing that Lisa would be more likely to come home if she were present.

¶ 6. At some point in the early morning of February 10, 1996, Burroughs returned to Sharon's residence, blowing his car horn. Sharon approached the vehicle and Burroughs indicated that he had found Lisa. Sharon got into Burroughs' car and he drove to a bar. Burroughs went into the bar and returned shortly. Sharon asked where Lisa was and Burroughs took her to another residence, indicating that he needed to make another phone call. Sharon stated that she would wait in the car. However, when Burroughs reminded her that they were in a bad neighborhood, Sharon agreed to accompany him into the residence.

¶ 7. Before entering an apartment in the residence, Burroughs had to unlock the main door of the residence and the apartment door using keys. Once inside the apartment, he attempted to make a phone call while Sharon took a seat in a chair by the door. Burroughs closed the curtains, stating that there were "nosey people" outside. Burroughs then turned to Sharon, asking her why she was shaking. He said, "[I]f you tell me . . . what happen[ed] to you I can let you go." Burroughs began to hug Sharon and then raised his fists saying, "[Y]ou know what you gotta do." Sharon backed up to the middle of the room and Burroughs instructed her to take her clothes off. Sharon refused until Burroughs reached behind his back and threatened to shoot her. Believing Burroughs had a gun behind his back, Sharon then took off everything but her bra.

¶ 8. Burroughs then told Sharon to sit on a small cot in a different, smaller room. Sharon refused until Burroughs said, "I'm not playing with you, sit . . .

186

down." Next, Burroughs ordered Sharon to lie down. She did so, and he proceeded to lie down next to her. Sharon testified that she was very upset at this point and "everytime [she] would try to raise up he would pull [her] down." Sharon cried for help and Burroughs told her to "shut up." Burroughs then said to Sharon that she would have to "give him some." Sharon understood this to mean that she would have to have sexual contact with Burroughs. Sharon then told Burroughs that she needed to go to the bathroom. Burroughs initially told her she did not need to go but then stood up and guided her to the bathroom. Burroughs stood over Sharon while she used the bathroom. When Sharon finished she tried to exit the bathroom toward a light from outside, but Burroughs guided her back into the bedroom. Once in the bedroom, Burroughs stood at the door facing her and told her to get back on the bed. When Burroughs started to take off his pants, Sharon was able to run past him. She ran screaming to the door of the separate apartment and then to the door of the house, which she had to unlock before exiting. Sharon received assistance from two people ·in a car she approached on the street, who later called the police.

¶ 9.   The State filed a criminal complaint against Burroughs alleging attempted first-degree sexual assault as a repeat offender. Following a bindover at the preliminary hearing, the State filed an information again alleging attempted first-degree sexual assault but adding a charge of kidnapping as a persistent repeat offender. As to kidnapping, the information alleged that Burroughs confined Sharon without her consent and with intent to cause her to be held secretly against her will. However, in an amended information, the State eliminated the secrecy allegation and instead alleged that Burroughs confined Sharon without her consent

and with intent to cause her *to be held to service against her will* pursuant to Wis. Stat. § 940.31(1)(b).[2]

¶ 10.   Burroughs' first jury trial commenced in April 1998. The jury found Burroughs guilty of both offenses. Prior to sentencing, the trial court found that Burroughs' 1975 conviction for "assault with intent to murder" in Alabama was comparable to the Wisconsin felony of attempted first-degree intentional homicide. Therefore, Burroughs was subject to increased penalties under Wisconsin's "three strikes" law, Wis. Stat. § 939.62(2m)(b), (c), and the court sentenced Burroughs to life in prison without parole.

¶ 11.   Burroughs filed a motion for a new trial on August 10, 1999, arguing, among other things, that certain testimony from his ex-wife was erroneously admitted at the jury trial. The trial court granted his motion and the matter proceeded to a second jury trial in February 2000. The jury convicted Burroughs, and he was again sentenced to life in prison without possibility of parole.

¶ 12.   Burroughs filed a motion for postconviction relief on October 13, 2000, in which he renewed his argument that the Alabama conviction was not comparable to a Wisconsin offense and, therefore, could not be used as a basis for a repeater allegation. The trial court denied the motion, and Burroughs appeals.

---

[2] Both the original and amended informations alleged a violation of Wis. Stat. § 940.31 without specifying a particular subsection or paragraph. Nonetheless, given the charging language, we conclude that paragraph (1)(b) would be the only applicable paragraph.

# DISCUSSION

## *Sufficiency of Evidence as to Confinement*

¶ 13.  Burroughs first argues that the evidence was insufficient to support a conviction of kidnapping. Specifically, he contends that there was insufficient evidence at trial to satisfy the "confinement" element of WIS. STAT. § 940.31(1)(b).

¶ 14.  In determining whether the evidence is sufficient to support a conviction, we bear in mind that the burden of proof at trial is upon the State to prove every essential element of the crime charged beyond a reasonable doubt. *State v. Hamilton*, 120 Wis. 2d 532, 540, 356 N.W.2d 169 (1984). "The test is not whether this court or any member is convinced of the guilt of the defendant beyond a reasonable doubt but whether this court can conclude that a trier of facts could, acting reasonably, be convinced to the required degree of certitude by the evidence which it had a right to believe and accept as true." *Id.* at 540–41. In reviewing the record, we view the evidence in the light most favorable to sustaining the conviction. *Id.* "Reasonable inferences drawn from the evidence can be used to support a conviction; if more than one reasonable inference can be drawn from the evidence, the inference which supports the conviction is the one that the reviewing court must adopt." *Id.*

¶ 15.  As relevant to this case, Wisconsin's kidnapping statute, WIS. STAT. § 940.31, states:

> (1) Whoever does any of the following is guilty of a Class B felony:
>
> . . . .

189

(b) By force or threat of imminent force . . . *confines* another without his or her consent and with intent to cause him or her to be . . . held to service against his or her will[.] (Emphasis added.)

The amended information echoed this statutory language. It alleged that Burroughs:

as a persistent repeat offender, by force or threat of imminent force [*confined*] another without her consent and with intent to cause her to be held to service against her will. (Emphasis added.)

¶ 16.   Thus, in this case, the State was required to prove that Burroughs forcibly confined Sharon without her consent and with the intent that she be held to service against her will. Wis. Stat. § 940.31(1)(b); Wis JI—Criminal 1281. Burroughs does not dispute that Sharon was held to service against her will. However, he contends that the evidence does not sufficiently demonstrate that Sharon was confined within the meaning of the kidnapping statute.

¶ 17.   Before we can address the sufficiency of the evidence to support the confinement element of kidnapping, we must define the term. We note at the outset that neither Wis. Stat. § 940.31(1)(b), Wis JI—Criminal 1281, nor any reported Wisconsin decision has defined the term "confine" for purposes of the kidnapping statute. The State argues that the meaning of the term in the context of the kidnapping statute is plain and unambiguous and therefore the State offers a conventional dictionary definition. Burroughs disputes this, but offers no alternative definition. In addition to the parties' arguments, we have examined and considered the definition used by other jurisdictions for purposes of their kidnapping statutes.

¶ 18. However, in the final analysis, we conclude that the answer lies in our own Wisconsin case law that has defined the term "confine" for purposes of WIS. STAT. § 940.30, the false imprisonment statute. This statute reads, "Whoever intentionally *confines* or restrains another without the person's consent and with knowledge that he or she has no lawful authority to do so is guilty of a Class E felony." *Id.* (emphasis added). The courts have held that false imprisonment, or confinement, is the "intentional, unlawful, and unconsented restraint by one person of the physical liberty of another." *Herbst v. Wuennenberg*, 83 Wis. 2d 768, 774, 266 N.W.2d 391 (1978). In addition, the Wisconsin jury instruction for false imprisonment, WIS JI—CRIMINAL 1275, provides in relevant part:

> The first element [of § 940.30] requires that the defendant confined or restrained (name of victim). Although this requires genuine restraint or confinement, it does not require that it be in a jail or prison. *If the defendant deprived (name of victim) of freedom of movement, or compelled him to remain where he did not wish to remain, then (name of victim) was confined or restrained.* The use of physical force is not required. One may be confined or restrained by acts or words or both. (Emphasis added, footnotes omitted.)

¶ 19. We view the false imprisonment statute as a cousin to WIS. STAT. § 940.31(1), the kidnapping statute. At the core, both offenses require nonconsensual and intentional confinement. However, kidnapping also requires certain accompanying circumstances: force or threat of force together with secret confinement, secret imprisonment, asportation out of this state, or holding

for service against the victim's will.[3] *Id.* We therefore are satisfied that the definition of "confine" as set forth in WIS JI—CRIMINAL 1275 is also appropriate for cases alleging kidnapping pursuant to § 940.31. We now evaluate Burroughs' evidentiary challenge in light of this definition.

¶ 20.  Burroughs contends that Sharon entered the apartment voluntarily, that she was not bodily constrained and that the door had not been barred. He also contends that the apartment was on a first floor and that Sharon could have jumped out a window without sustaining major injuries. Based on this lack of physical confinement and a potential for escape, Burroughs contends that Sharon was not sufficiently confined. We disagree. Physical force is not essential to a finding of confinement. WIS JI—CRIMINAL 1275. Nor are we persuaded that the presence of an opportunity to escape requires the victim to take that risk, and we know of no law that so holds.

¶ 21.  Sharon testified that Burroughs took her to a strange apartment under the guise of locating her missing cousin. Once there, he raised his fists at her and threatened to shoot her if she did not take off her clothes. When Sharon headed for the door of the apartment, Burroughs guided her to a bedroom. He made her lie down on a cot and told her what she would have to do for him before leaving. Finally, Burroughs accompanied her and stood over her while she used the bathroom. Despite efforts to head toward the door and

---

[3] However, false imprisonment is not a lesser-included offense of kidnapping. This is because false imprisonment requires proof of knowledge that the actor has no authority to confine the victim whereas kidnapping does not. *Geitner v. State*, 59 Wis. 2d 128, 133, 207 N.W.2d 837 (1973).

cry for help, Sharon was not able to leave the apartment until Burroughs' ability to stop her was hampered in taking off his pants.

¶ 22.   Based on the evidence presented at trial, we conclude that a reasonable jury could find that Burroughs confined Sharon by depriving her of her freedom of movement and compelling her to remain where she did not wish to remain. We therefore uphold the jury's conviction.

### Application of the "Three Strikes" Law, WIS. STAT. § 939.62

*1. Comparability of Wisconsin and Alabama Statutes*

¶ 23.   Burroughs next challenges the trial court's application of the "three strikes" law, WIS. STAT. § 939.62(2m)(c), which provides for an increased penalty for "persistent repeaters." Burroughs argues that in imposing the increased penalty, the trial court erroneously relied upon a 1975 conviction in Alabama for "assault with intent to murder."[4]

¶ 24.   Pursuant to WIS. STAT. § 939.62(2m)(b)1, an actor is a persistent repeater if "[t]he actor has been convicted of a serious felony on 2 or more separate occasions at any time preceding the serious felony for which he or she presently is being sentenced under ch. 973, which convictions remain of record and unreversed. . . ." A "serious felony" is defined by § 939.62(2m)(a)2m and includes "[a] crime at any time under . . . the law of any other state . . . that is compa-

---

[4] Burroughs does not challenge the other conviction relied upon by the trial court in finding him to be a "persistent repeater" pursuant to WIS. STAT. § 939.62(2m)(b).

rable to a crime specified in subd. 2m. a., b. or c." Sec. 939.62(2m)(a)2m.d. Subparagraph (2m)(a)2m.c includes the attempt to commit a Class A felony such as first-degree intentional homicide contrary to Wis. STAT. § 940.01. The trial court found that Burroughs' conviction for "assault with intent to murder" was comparable to Wisconsin's attempted first-degree intentional homicide statute. Burroughs challenges the trial court's finding of comparability.[5]

¶ 25. At the time of Burroughs' Alabama conviction, Title 14, Section 38 of the Alabama Code (1958) governed Assault with Intent to Murder.[6] It covered "[a]ny person who commits an assault on another, with intent to murder. . . ." Based on the language of the statute and the accompanying Alabama jury instruction, we conclude that the elements of this offense were (1) that a person committed an assault on another and (2) that person had the intent, "unlawfully and maliciously to kill the person assaulted." Alabama Jury Instructions, Vol. 2, § 5961 (1953).

¶ 26. By comparison, Wisconsin's statute governing "attempt" provides, "An attempt to commit a crime requires that the actor have an intent to perform acts and attain a result which, if accomplished, would constitute such crime. . . ." Wis. STAT. § 939.32(3). In order to prove attempted first-degree intentional homicide,

---

[5] We note that the State contends that Burroughs concedes the comparability of the Alabama and Wisconsin offenses in his brief. However, the State's argument is based on a too narrow reading of Burroughs' brief. We therefore address the merits of Burroughs' argument on this issue.

[6] We note that Alabama's Assault with Intent to Murder statute was eliminated in 1978 and is now addressed by the Alabama statute governing Attempt, § 13A-4-2. ALA. CODE § 13A-6-20 through 13A-6-22, commentary (2001).

the State must prove the following elements: (1) the defendant intended to commit the crime of first-degree intentional homicide which is committed by one who (a) causes the death of another person and (b) intended to kill that person, and (2) the defendant did acts toward the commission of a crime of first-degree intentional homicide which demonstrate unequivocally, under all of the circumstances, that the defendant intended to and would have committed the crime of first-degree intentional homicide except for the intervention of another person or some other extraneous factor. Wis JI—Criminal 580, 1010.

¶ 27.   Burroughs argues that the two statutes are not "comparable" and, therefore, he should be resentenced to eliminate the persistent repeater portion of his sentence. Burroughs argues that the element of "intent" differs between the two statutes and that the Alabama statute does not provide for the interruption in the criminal act by an extraneous force. While we acknowledge that the language of the statutes is not identical and that certain nuances may differ, this does not per se translate into a lack of comparability.[7] Moreover, in *Clark v. State*, 333 So. 2d 885 (Ala. Crim. App. 1976), the Alabama Court of Criminal Appeals expressly debunks Burroughs' argument. There, the court held that the offense of "an attempt to commit an assault with intent to murder" would be the equivalent of "an attempt to commit murder." *Id.* at 887. We

---

[7] The commentary to Alabama's current code provides that it "eliminates the 'assault with intent' crimes which are now treated as attempts under § 13A-4-2. . . . Therefore, instead of prosecuting for assault with intent to murder . . . it is proper to charge attempted murder." Ala. Code § 13A-6-20 through 13A-6-22, commentary (2001).

195

therefore conclude that the Alabama Assault with Intent to Murder statute is comparable to Wisconsin's Attempted First-Degree Intentional Homicide statute. Therefore, the Alabama conviction qualified as the premise for a strike against Burroughs under Wisconsin's "three strikes" law pursuant to Wis. Stat. § 939.62(2m)(b), (c).

## 2. Challenge to the Alabama Plea

¶ 28.   Finally, Burroughs contends that the record did not contain sufficient proof that his guilty plea resulting in his 1975 Alabama conviction was knowing, intelligent and voluntary. Therefore, Burroughs contends that the trial court improperly relied upon the conviction as a strike under Wis. Stat. § 939.62(2m)(b).

¶ 29.   We conclude that the supreme court's decision in *State v. Hahn*, 2000 WI 118, 238 Wis. 2d 889, 618 N.W.2d 528, controls this issue. Like Burroughs, the defendant in *Hahn* was appealing his life sentence without the possibility of parole under Wisconsin's persistent repeater statute ("three strikes" law), Wis. Stat. § 939.62(2m)(b), (c). *Hahn*, 2000 WI 118 at ¶ 2. Also like Burroughs, Hahn argued that the United States Constitution required that an offender be permitted to challenge the prior conviction as unconstitutional on grounds that it was based on a guilty plea that was not knowing, intelligent and voluntary. The *Hahn* court concluded that "an offender does not have a federal constitutional right to use the enhanced sentence proceeding predicated on a prior state conviction as the forum in which to challenge the prior conviction, except when the offender alleges that a violation of the constitutional right to a lawyer occurred in the prior state conviction." *Id.* at ¶ 4.

¶ 30. Here, the document entitled "Judgment of Plea of Guilty and Sentence to the Penitentiary" from Alabama indicates that Burroughs appeared before the court and entered his plea while represented by counsel. Given that Burroughs has not contested this fact either on appeal or before the trial court, we conclude that the trial court properly relied on the Alabama conviction in sentencing Burroughs under the "three strikes" law.

## CONCLUSION

¶ 31. We conclude that there was sufficient evidence for a reasonable jury to find that Burroughs confined Sharon contrary to the kidnapping statute, WIS. STAT. § 940.31(1)(b). We further conclude that the trial court properly relied on Burroughs' 1975 Alabama conviction as a basis for the "persistent repeater" portion of his sentence. We therefore affirm the judgment of conviction and the order denying Burroughs' request for postconviction relief.

*By the Court.*—Judgment and order affirmed.