State of Wisconsin, Plaintiff-Respondent,
v.
Bobby D. Salas, Defendant-Appellant.
No. 04-0037-CR.
Court of Appeals of Wisconsin.
Opinion Filed: September 14, 2004.
Before Cane, C.J., Hoover, P.J., and Peterson, J.
¶1 PER CURIAM.
Bobby Salas appeals his judgment of conviction for second-degree sexual assault and aggravated battery in violation of WIS. STAT. §§ 940.225(2)(a) and 940.19(6)[1] and an order denying his motion for postconviction relief. Salas argues: (1) there was insufficient evidence to support the jury's finding of "great bodily harm," (2) the circuit court improperly commented on witness credibility, requiring a new trial in the interest of justice, (3) the circuit court erroneously admitted other acts evidence, (4) the circuit court improperly directed a verdict in the mental responsibility phase of the trial, (5) the circuit court erroneously denied his motion for an evidentiary hearing on his ineffective assistance of trial counsel claim, and (6) the circuit court improperly assumed he was guilty of charges for which he was acquitted in sentencing. We reject Salas's arguments and affirm the judgment and order.

BACKGROUND
¶2 Salas spent much of November 14, 2001, with his girlfriend, Heidi Breitbach. The two had several arguments over the course of the day about Breitbach's former boyfriends. Salas spent the evening with Breitbach in her dormitory at the University of Wisconsin-River Falls.
¶3 Around 3:45 a.m. on November 15, Salas and Breitbach went outside the dormitory to smoke. Salas started arguing again about Breitbach's former relationships. He grabbed her coat and told her to walk with him. The two walked about one-half mile before stopping by a tree in front of another campus building.
¶4 Salas held Breitbach against the tree with his forearm and began talking about how she had lied to him about her past boyfriends. Salas struck Breitbach on the left temple with an empty beer bottle, which caused her to black out for about thirty seconds. When she came to, Salas struck her three or four more times in the head with the bottle. He choked her several times and struck her with his hands thirty or forty times.
¶5 Salas wanted to go to a place with no lights or people, so Breitbach told him about a trail running from the back of Hathorn Hall leading to the athletic fields. As they walked toward the trail, Salas grabbed Breitbach's jaw and pushed her head into a brick wall. He also kneed her in the stomach three or four times. They continued walking, passing through a parking lot behind Hathorn Hall where Salas pushed Breitbach into two parked vehicles.
¶6 Salas and Breitbach walked down the trail, through the amphitheater and to the bathrooms by the intramural athletic fields. Salas instructed Breitbach to remove her clothing and lay on top of a picnic table. He then forced her to have vaginal, oral and anal intercourse with him.
¶7 Shortly afterward, Salas expressed horror at what he had done and threatened to kill Breitbach so there would be no witnesses. He also said he needed to kill himself or get away. He ran away across the intramural fields. Breitbach, afraid that Salas would hurt himself, chased after him. She tackled him and pinned him to the ground. He again threatened to kill himself and attempted to swallow his tongue to stop breathing. Breitbach revived him.
¶8 Breitbach assisted Salas back to her dormitory room, and they both went to sleep. Around 9 a.m., Breitbach went outside with her roommate, Emily, to smoke and showed Emily a bruise and bite mark inflicted by Salas. Breitbach told Emily that Salas had hit her, and Emily thought Breitbach looked upset. Laura, one of Breitbach's neighbors, also saw Breitbach around 9 a.m., and Breitbach told her about the black eye she got from Salas. Two days later, Emily and Laura reported Breitbach's injuries and statements to campus security.
¶9 In April of 2002, Salas was charged with one count of aggravated battery and three counts of sexual assault. Salas entered pleas of not guilty and not guilty by reason of mental disease or defect. The circuit court appointed two persons to examine Salas regarding his mental state: Dr. Frederick Fosdal at the request of the prosecution and Dr. Paul Caillier at the request of the defense. Caillier had already been appointed to examine Salas in St. Croix County on an unrelated charge stemming from a March 2002 incident.
¶10 In the guilt phase of the trial, the jury convicted Salas of aggravated battery and sexual assault (oral intercourse), but acquitted him on the other two sexual assault charges (vaginal and anal intercourse). In the mental responsibility phase of the trial, Caillier testified that based on his examination of Salas for the St. Croix County case, Salas had been suffering from a mental illness for several years prior to March 2002. However, Caillier was unable to give an opinion on whether Salas understood right from wrong or could conform his conduct to the law in November of 2001 because he never examined Salas regarding that time frame. Salas also testified in this phase of the trial. He did not remember most of the events of November 15, 2001, and contended that he had only consensual sex with Breitbach. He testified that he would not have had nonconsensual sexual intercourse, which he admitted he knew would be wrong. After Salas rested his case, the circuit court directed a verdict for the prosecution. On January 13, 2003, Salas was sentenced.
¶11 On October 14, 2003, Salas filed a motion for postconviction relief. He alleged that his due process rights had been violated by comments the circuit court made on witness credibility during testimony, that he was denied the effective assistance of counsel by the failure to secure expert testimony, that the court improperly granted a directed verdict in the mental responsibility phase of the trial and that the court erroneously exercised its sentencing discretion. He asked that the judgment of conviction be vacated, and he sought a new trial in the interest of justice, an evidentiary hearing on the ineffective assistance claim, a new sentencing hearing and the reappointment of Caillier. The circuit court denied Salas's motion in its entirety.

DISCUSSION

Sufficiency of Evidence
¶12 Salas argues that there was insufficient evidence to find his conduct created a substantial risk of great bodily harm, required for conviction of aggravated battery, WIS. STAT. § 940.19(6).[2] He contends that, because Breitbach only sustained minor injuries, because there was no medical testimony that the injuries could have been more serious, and because there was no evidence from which a jury could infer that he used substantial force, there was insufficient evidence for the jury to convict him.
¶13 When determining whether there is sufficient evidence to support a conviction, we use a highly deferential standard of review. We view the evidence in the light most favorable to the conviction. State v. Burroughs, 2002 WI App 18, ¶14, 250 Wis. 2d 180, 640 N.W.2d 190. We also consider reasonable inferences the fact finder could make from that evidence. State v. Williams, 2002 WI 58, ¶74, 253 Wis. 2d 99, 644 N.W.2d 919. We do not substitute our judgment for that of the trier of fact unless the evidence "is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." State v. Poellinger, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990).
¶14 Salas agrees that the "substantial risk of great bodily harm" element often arises as a matter of common sense and logic directly from the evidence. See State v. Cooper, 117 Wis. 2d 30, 38, 344 N.W.2d 194 (Ct. App. 1983) (jury could conclude that running a red light at fifty miles-per-hour created such a risk). However, Salas claims that this case departs from common sense. He contends that since Breitbach "escaped virtually unscathed," her injuries are "wholly inconsistent with her accusations." Therefore, the jury could not have found a risk of great bodily harm solely from Breitbach's testimony.
¶15 Salas's argument attacks the credibility of Breitbach's testimony. However, "[t]he credibility of witnesses and the assignment of weight afforded to witness testimony are left to the province of the jury." State v. Miller, 2002 WI App 197, ¶20, 257 Wis. 2d 124, 650 N.W.2d 850. It is the function of the jury, not this court, to resolve any conflicts or inconsistencies in testimony. State v. Pankow, 144 Wis. 2d 23, 30-31, 422 N.W.2d 913 (Ct. App. 1988). We will not substitute our judgment for that of the jury merely because there is conflicting evidence or evidence that could sustain a different result. Id. at 30.
¶16 To sustain the conviction here, the evidence need only establish that Salas's conduct created a substantial risk of great bodily harm, not that Breitbach actually suffered great bodily harm. See State v. Johnson, 184 Wis. 2d 324, 347, 516 N.W.2d 463 (Ct. App. 1994). The jury could find credible Breitbach's account of the prolonged assault. Breitbach testified that in the assault she sustained multiple blows to the head with an empty beer bottle that caused her to lose consciousness, was choked, was struck numerous times by Salas's hands and fists, had her head pushed into a brick wall, was kneed three or four times in the stomach and was pushed into several motor vehicles. Common sense permits the jury to find a substantial risk of great bodily harm in the assault Breitbach described.

Comment on Witness Credibility
¶17 Salas contends that the trial judge impermissibly commented on witness credibility, warranting a new trial in the interest of justice. During the testimony of the first witness, Breitbach's dormitory roommate, the following occurred:
[THE STATE]: During the course of that conversation with you did Ms. Breitbach tell you how those injuries occurred?
[WITNESS]: Yes.
[THE STATE]: Can you tell the jury what she said?
[WITNESS]: That 
[DEFENSE COUNSEL]: Objection. Hearsay.
[THE STATE]: Offer it as an excited utterance.
THE COURT: Overruled. Answer the question.
[WITNESS]: That Bobby had hit her.
[THE STATE]: Did she say how he had hit her?
[DEFENSE COUNSEL]: Objection again, hearsay.
THE COURT: It is not hearsay. Clearly the testimony is the victim in this case was under emotional upset very closely after the incident occurred. It is not hearsay, it is an exception. Go ahead and testify.... (Emphasis added.)
Salas contends that the circuit court's explanation of its hearsay ruling included characterizations of Breitbach as a "victim," that she had experienced an "incident" that caused a state of "emotional upset." Those characterizations, Salas argues, were an impermissible comment on Breitbach's credibility. Because the credibility of Breitbach's testimony was the central issue in this case, Salas alleges the circuit court's comments prevented the real controversy from being fully tried. Salas urges us to use our discretionary power to grant a new trial.
¶18 We have the discretionary authority to remand for a new trial when an error prevented the real controversy from being tried, even if there was no objection to the error. WIS. STAT. § 752.35; Vollmer v. Luety, 156 Wis. 2d 1, 17, 456 N.W.2d 797 (1990). Accordingly, to grant a new trial here, we must conclude that the circuit court erred and that the error prevented a trial of the real controversy.
¶19 We conclude that although the circuit court could have selected its words more wisely, it committed no error here. Salas concedes that the circuit court properly admitted the testimony as an excited utterance. The circuit court's words were also an acceptable ruling on the hearsay objection. The court was not commenting on Breitbach's credibility, but was referring to the foundation that supported its evidentiary ruling. The court phrased its explanation in terms of the testimony"the testimony is the victim in this case"not as facts. The court's failure here to preface its comments with "alleged" does not constitute error that justifies our use of discretionary reversal.
¶20 Even if the court's comments here were in error, they do not require a new trial in the interest of justice. The cases on which Salas relies involved multiple errors or multiple comments on witness credibility far beyond the court's isolated comment here. Salas argues that the comments caused the jury to defer to the judge's opinion on credibility. If that were the case, the jury logically would have returned convictions on all four charges and not have acquitted Salas of two of the sexual assault charges. Accordingly, the allegedly erroneous comments did not, as Salas contends, "completely undercut" the theory of his defense. We conclude that the circuit court's comments did not prevent the real controversy from being tried and decline to use our discretionary power to order a new trial.

Other Acts Evidence
¶21 Salas contends that the circuit court erred by admitting the testimony of Amber Lowen, Salas's former girlfriend, about Salas's sexual assault of her. Salas argues that Lowen's sexual assault testimony was irrelevant and the assault too dissimilar to warrant admission.
¶22 The admission of other acts evidence is within the circuit court's discretion. State v. Pharr, 115 Wis. 2d 334, 342, 340 N.W.2d 498 (1983). We affirm the circuit court's evidentiary ruling if it examined the relevant facts, applied a proper standard of law, used a demonstrated rational process, and reached a conclusion that a reasonable judge could reach. State v. Hunt, 2003 WI 81, ¶34, 263 Wis. 2d 1, 666 N.W.2d 771.
¶23 Other acts evidence is admitted under the three-step test set forth in State v. Sullivan, 216 Wis. 2d 768, 771-73, 576 N.W.2d 30 (1998). First, the court analyzes whether the other acts evidence is being offered for a permissible purpose under WIS. STAT. § 904.04(2). Id. at 772. The second step of the Sullivan test assesses the relevance of the evidence under WIS. STAT. § 904.01: whether the evidence has a "tendency" to make the existence of any fact that is of consequence to the determination of the action "more or less probable than it would be without the evidence." Id. The third step of the test questions whether the evidence's probative value is substantially outweighed by its prejudicial effect. Id.
¶24 The circuit court appropriately considered the other acts evidence under the Sullivan test. It concluded the evidence was offered for the permissible purpose of establishing the motive of control. Salas does not challenge this conclusion. Salas also concedes that the court correctly determined in step two that motive is a fact of consequence. However, Salas disputes the "more or less probable" portion of step two. The circuit court concluded that the evidence was relevant. It explained:
It is my determination however that the issue of motive is relevant. We have already talked about that issue. The nature of the relationship as laid out in these affidavit[s is] very similar. I think they demonstrate a controlling relationship, and can provide an explanation as to why again someone would have a motive to sexually assault someone with whom they have had consensual sexual relations. That's the issue. That's what people don't understand why would somebody do that. What would the motive be? The motive, purpose is to control, not simply to have physical pleasure in the relationship. See, I think that is made out in the affidavits of both the young women who have been filed here, so I am going to allow that in on that basis.
¶25 Salas contends that the assaults of Breitbach and Lowen were too dissimilar to be relevant. Salas concedes that Lowen's testimony about their relationship was properly admitted but argues that her testimony about the assault was not. Salas provides a list of differences that supposedly render Lowen's assault testimony irrelevant.
¶26 However, we agree with the circuit court that the sexual assault was just one in a series of acts by Salas that establish the controlling nature of the relationships he had with each woman. The similarity and relevance of the evidence lies not just in the act itself, but the context of the act, notwithstanding Salas's attempt to separate the relationship from the assault. Each incident occurred while Salas was angry, and each incident involved force, violence or threats. After each incident, Salas became emotional and apologetic. Finally, each time Salas used threats against himself to manipulate the victims into not reporting the incidents.
¶27 Salas also argues that Lowen's testimony was unnecessary to educate the jury on the motive of control in sexual assault cases. Salas contends that jurors know that sexual assault is about violence and control, not physical pleasure and intimacy, and therefore need no explanation of why someone who was in a relationship that included consensual sex would force nonconsensual intercourse with the same person. However, Salas's trial strategy emphasized the very misconception he now disavows. During the trial, Salas emphasized the consensual nature of his relationship with Breitbach, implying that a consensual relationship excluded the likelihood of a sexual assault. Salas cannot, on appeal, be heard to argue the opposite position. See State v. McDonald, 50 Wis. 2d 534, 538, 184 N.W.2d 886 (1971).
¶28 Finally, Salas contends that Lowen's testimony fails the third step of the Sullivan test because its probative value is substantially outweighed by its prejudicial effect. However, Salas bears the burden of establishing prejudicial effect, see Hunt, 263 Wis. 2d 1, ¶69, and his argument on this point is confined to a conclusory statement that he was prejudiced. See State v. Pettit, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (court of appeals may decline to address issues inadequately briefed). Certainly, Lowen's testimony was prejudicial to Salas's case, but Salas has failed to show that the testimony was unfairly prejudicial. See State v. Mordica, 168 Wis. 2d 593, 605, 484 N.W.2d 352 (Ct. App. 1992). Furthermore, the court instructed the jury that Lowen's testimony was only to be considered on the issue of motive. Such a cautionary instruction substantially mitigates the potential unfair prejudice stemming from the admission of other acts evidence. Hunt, 263 Wis. 2d 1, ¶¶73-75. We conclude the circuit court properly applied the Sullivan test and did not erroneously exercise its discretion by admitting Lowen's testimony.

Directed Verdict
¶29 Salas contends that the circuit court erred by directing the verdict in the mental responsibility phase of the trial. Salas argues that: (1) the circuit court improperly considered Salas's mental responsibility at the time of trial instead of the time of the offense, (2) it improperly relied on Salas's own assessment of his ability to tell right from wrong, and (3) it improperly found that Salas could conform his conduct to the law.
¶30 Salas's plea of not guilty by reason of mental disease or defect is an affirmative defense that placed the evidentiary burden on him to prove that he suffered from a mental disease or defect at the time of the offense and that it prevented him from appreciating the wrongfulness of his conduct or from conforming his behavior to the law. See WIS. STAT. § 971.15. In order to prevail, he was required to establish his lack of mental responsibility to "a reasonable certainty by the greater weight of the credible evidence." WIS. STAT. § 971.15(3).
¶31 The circuit court may direct a verdict in the mental responsibility phase of the trial if, when viewing the evidence most favorably to the defendant, there is no credible probative evidence supporting the defense. State v. Leach, 124 Wis. 2d 648, 663, 370 N.W.2d 240 (1985). In fact,
if reasonable minds cannot reach different conclusions from the evidence but agree the evidence against mental disease or defect is so overwhelming, it is the duty of the court to rule on the issue as a matter of law so as to preclude the jury from speculating on the question.
Id. at 660. We review the circuit court's ruling to determine whether the directed verdict was "clearly wrong." Id. at 665.
¶32 Salas's argument relies on alleged errors in the circuit court's reasoning when directing the verdict. However, Salas fails to point to any credible evidence on which the jury could find in his favor in this phase of the trial. Salas's expert, Caillier, testified that he had examined Salas regarding a charge in St. Croix County stemming from a March 2002 incident. Based on that examination, he concluded that Salas was suffering from a mental disease in March of 2002 and likely had been for several years. However, because he had not examined Salas regarding the November 2001 incident, he could not give an opinion on Salas's ability to discern the wrongfulness of his conduct or conform his conduct to the law when these offenses occurred. Caillier also admitted that merely having a mental disease or defect does not necessarily render a person unable to discern right from wrong or unable to conform to the law.
¶33 The lack of a favorable expert opinion is not necessarily fatal to Salas's affirmative defense. See id. at 666. However, Salas did not introduce any other credible evidence to support his claim. The other witnesses for the defense in this phase of the trial, Salas and his mother, generally supported the claim that Salas suffered from a mental disease or defect. However, those witnesses did not provide any evidence from which the jury could conclude that at the time of the offense Salas could not discern the wrongfulness of his conduct or conform his conduct to the requirements of the law. In fact, Salas testified that he would not have had sex with Breitbach on the date in question if it had not been consensual and that he understood nonconsensual sex to be wrong. Because Salas failed to produce evidence to support his affirmative defense, the circuit court did not err when it directed a verdict in the mental responsibility phase of the trial.

Ineffective Assistance of Counsel
¶34 Salas asks this court to remand for an evidentiary hearing to determine whether he was denied the effective assistance of trial counsel. Salas's trial counsel, in essence, attempted to establish an insanity defense without an expert witness, since he failed to have Caillier examine Salas regarding these charges. Salas contends that his trial attorney's conduct was deficient and that his postconviction motion adequately alleged ineffective assistance. Therefore, Salas argues that the circuit court improperly denied his motion for an evidentiary hearing to determine whether he was prejudiced by his attorney's deficiency and, therefore, denied the effective assistance of counsel.
¶35 To establish ineffective assistance of counsel, a defendant must show both that trial counsel's performance was deficient and that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 697 (1984); State v. Pitsch, 124 Wis. 2d 628, 633, 369 N.W.2d 711 (1985). Prejudice requires more than just a showing of a conceivable effect on the outcome of the trial. State v. Erickson, 227 Wis. 2d 758, 773, 596 N.W.2d 749 (1999). Rather, the defendant must allege facts establishing that, but for the attorney's deficient performance, there was a reasonable probability of a different trial outcome. Id.
¶36 A defendant alleging ineffective assistance of counsel is not entitled to an evidentiary hearing as a matter of right. To obtain an evidentiary hearing, the defendant must allege sufficient facts in a postconviction motion that, if true, would entitle the defendant to relief. State v. Thornton, 2002 WI App 294, ¶27, 259 Wis. 2d 157, 656 N.W.2d 45. A conclusory statement that the defendant was denied effective assistance of counsel is not enough to trigger an evidentiary hearing. State v. Bentley, 201 Wis. 2d 303, 313, 548 N.W.2d 50 (1996); State v. Saunders, 196 Wis. 2d 45, 51-52, 538 N.W.2d 546 (Ct. App. 1995). Otherwise, every defendant whose trial counsel made any mistake would be entitled to an evidentiary hearing by virtue of a bare allegation of prejudice in a postconviction motion. Bentley, 201 Wis. 2d at 317-18. Given the high volume of postconviction motions, such a result would place a tremendous strain on the court system. Id.
¶37 When the circuit court is presented with an ineffective assistance of counsel claim, it must review the postconviction motion on its face to determine whether the defendant has alleged sufficient facts that would entitle the defendant to relief. Id. at 309-10. We review the circuit court's ruling on this question independently. Id. at 310. If the circuit court determines that the defendant has failed to allege sufficient facts, it may deny the motion without an evidentiary hearing. Id. We examine the circuit court's discretionary decision under the erroneous exercise of discretion standard of review. Id. at 311.
¶38 Salas contends that he alleged sufficient facts to warrant an evidentiary hearing on his claim of ineffective assistance of trial counsel. Salas argues that his postconviction motion established that trial counsel's errors created the "functional equivalent of going to trial" without an expert, which constitutes ineffective assistance of counsel. Salas's arguments may support the deficient performance prong of the two-part ineffective assistance analysis. However, the lack of an expert witness is not prejudicial and, therefore, does not constitute ineffective assistance, if no favorable expert opinion is available.
¶39 Salas's motion failed to allege any facts that would allow the court to meaningfully assess Salas's claim that he was prejudiced by the lack of expert testimony. See Bentley, 201 Wis. 2d at 316. Salas failed to allege that a favorable expert opinion is available or allege facts that would support a favorable expert opinion. Salas's arguments on the prejudice prong are exercises in hypothesis: had Caillier evaluated Salas on these charges, he "might well have opined" that Salas lacked mental responsibility and "it is entirely possible that Salas would not have testified ...." Salas has not established that, had his trial counsel not been deficient, there is a reasonable probability that the trial outcome would have been different. See Erickson, 227 Wis. 2d at 773.
¶40 Salas's real complaint here is that the circuit court should have appointed Caillier to evaluate Salas on these charges, since a favorable report from Caillier would factually support Salas's ineffective assistance of counsel claim. However, Salas's arguments on appeal are confined to the circuit court's denial of his request for an evidentiary hearinga request that was properly denied based on Salas's lack of factual support for his arguments.
¶41 Salas's contention that he could not present facts to support his claim without the evidentiary hearing is likewise flawed. While Salas could not retain Caillier without a court order pursuant to WIS. STAT. § 971.16(2), Salas could have made factual allegations to support his conclusion that the absence of expert testimony on mental responsibility prejudiced him. Yet, Salas offered no affidavit delineating the information he would provide an expert that would support a conclusion of lack of responsibility. Instead, Salas's motion merely concluded that Caillier was a "favorable witness."
¶42 In summary, Salas's postconviction motion contained only conclusory statements that his lack of an expert witness was prejudicial. His motion alleged no facts that, if true, would entitle him to relief. Accordingly, the circuit court properly denied his motion for an evidentiary hearing.

Sentencing
¶43 Salas claims that the circuit court erroneously exercised its discretion when it sentenced him to eighteen years' confinement for one count of sexual assault. Salas alleges error in sentencing based on a single statement by the circuit court: "The victim was not only forcibly assaulted on more than one occasion, more than one type of sexual assault, but it was a violent sexual assault ...."[3] Salas contends that the court's statement indicates it improperly assumed that he was guilty of the two additional sexual assault charges of which he was acquitted when it sentenced him on the single count.
¶44 Sentencing is a discretionary function of the court. State v. Echols, 175 Wis. 2d 653, 681, 499 N.W.2d 631 (1993). We reverse only if the circuit court erroneously exercised its discretion. Id. There is a strong public policy against interfering with the circuit court's sentencing discretion and therefore we begin with the presumption that the circuit court acted reasonably. Id. at 681-82.
¶45 The circuit court should consider three primary factors in sentencing: the gravity of the offense, the character of the defendant and the need to protect the public. Harris v. State, 75 Wis. 2d 513, 519, 250 N.W.2d 7 (1977). The court may also consider:
(1) Past record of criminal offenses; (2) history of undesirable behavior pattern; (3) the defendant's personality, character and social traits; (4) result of presentence investigation; (5) vicious or aggravated nature of the crime; (6) degree of the defendant's culpability; (7) defendant's demeanor at trial; (8) defendant's age, educational background and employment record; (9) defendant's remorse, repentance and cooperativeness; (10) defendant's need for close rehabilitative control; (11) the rights of the public; and (12) the length of pretrial detention.
Id. at 519-20.
¶46 Additionally, it is well established that the sentencing court can consider charges of which a defendant has been acquitted. See State v. Arredondo, 2004 WI App 7, ¶54, 269 Wis. 2d 369, 674 N.W.2d 647; State v. Bobbitt, 178 Wis. 2d 11, 16-18, 503 N.W.2d 11 (Ct. App. 1993). This rule recognizes the distinction between the role of the jury to determine whether guilt has been established beyond a reasonable doubt and the role of the sentencing court "to assess the defendant's character using all available information." Arredondo, 269 Wis. 2d 369, ¶53. That information "need not, of course, be established beyond a reasonable doubt." State v. Marhal, 172 Wis. 2d 491, 502, 493 N.W.2d 758 (Ct. App. 1992). Accordingly, the court may take into account conduct or facts that supported charges that resulted in not guilty verdicts when sentencing. Arredondo, 269 Wis. 2d 369, ¶54. However, "a court may not sentence according to its desire to replace a jury's conclusion with its own." Bobbitt, 178 Wis. 2d at 18.
¶47 In Bobbitt, the defendant was charged with three offenses stemming from one incident and involving one victim. Id. at 13. The jury convicted on two charges but acquitted on the third. Id. When sentencing, the circuit court considered Bobbitt's violent acts as an aggravating factor. Id. at 13-14. Bobbitt argued that since those violent acts were related to the acquittal but unrelated to the convictions, the court erred by considering them in sentencing. Id. at 16. We held that the court properly considered the violence related to the acquittal. Id. at 18. We concluded that the court's acceptance of the victim's version of events during sentencing did "not mean it substituted its judgment for that of the jury as to the [acquitted] charge." Id.
¶48 Salas concedes that, under Bobbitt, the court could properly consider the two acquittals. Instead, he contends that the court went beyond consideration here. Salas argues that the court's statement indicates it assumed he was guilty of all three sexual assault charges and, by that assumption, improperly replaced the jury's acquittals with its own judgment. Even if the court adopted the victim's version of events when sentencing, Salas has not established that the court's sentence replaced the jury's judgment with its own. See id.
¶49 To begin, the court's sentence of eighteen years' confinement on the single sexual assault conviction was well within the maximum thirty-year period of confinement permitted by statute. See WIS. STAT. §§ 940.225(2)(a); 939.62(1)(c) and 973.01(2)(b) (1999-2000). Even more importantly, the challenged statement was made in the context of the court's discussion of Salas's character, specifically his use of violence both in this incident and in past incidents. The court explained:
This particular sexual assault involved force and violence, substantial force and violence ... and, the court listened to the testimony and it was well substantiated, the level of force and violence, it was also a very degrading offense. The victim was not only forcibly assaulted on more than one occasion, more than one type of sexual assault, but it was a violent sexual assault and a degrading and controlling behavior by the defendant.... There is of course a conviction for felony assault which involved a use of a weapon by Mr. Salas against another person. We also have the violence as directed to Amber Lowen. We also have the violence directed to her parents when they attempted to intervene. And there is also violence directed towards Ms. Breitbach's parents when they attempted to intervene as well in this matter. There is also the violence that occurred when Mr. Salas was taken into custody by the police.
¶50 Nor does the fact that the court's eighteen-year term of confinement exceeds the ten-year recommendation in the presentence report support Salas's claim of sentencing error. The presentence report is not binding on the sentencing court, but is only one of many factors the court may consider in sentencing. See Harris, 75 Wis. 2d at 519-20. The court did take into account the recommended ten-year period but, considering the need to protect the public, especially Salas and Breitbach's child, found eighteen years to be an appropriate term of confinement:
[I]t is my judgment that Mr. Salas should not be released from prison while this child is in fact a child. The child will be an adult in 18 years and that's when Mr. Salas should be eligible for release in my opinion.
¶51 In reaching Salas's term of confinement, the court engaged in an extensive explanation in which it considered the seriousness of the offense, the character of the defendant and the need to protect the public. It considered both the level of violence used in this sexual assault and Salas's history of violent and manipulative behavior. It considered Salas's denial of responsibility for the offense and, due to his denial, his high risk to reoffend. Because the circuit court relied on proper factors, including consideration of the charges of which Salas was acquitted, and reached a reasoned and reasonable conclusion, we do not disturb its sentence on appeal.
By the Court.  Judgment and order affirmed.
NOTES
[1] All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.
[2] WISCONSIN STAT. § 940.19(6) reads in relevant part:

Whoever intentionally causes bodily harm to another by conduct that creates a substantial risk of great bodily harm is guilty of a Class H felony.
"Great bodily harm" is defined in WIS. STAT. § 939.22(14) as:
bodily injury which creates a substantial risk of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily injury.
[3] The State alleges that Salas waived any error from this statement by failing to object. While generally an appellant must present issues in the circuit court in order to preserve them for appeal, there is no requirement that a defendant must lodge a contemporaneous objection to a court's sentence explanation in order to preserve a challenge to the court's sentencing discretion.